## Richmond.

## MARY L. JORDAN v. THE BUENA VISTA COMPANY AND OTHERS.

### NOVEMBER 18, 1897.

1. VENDOR'S LIEN—*Duration of—Case in Judgment.*—A vendor's lien exists until it is clearly shown that it has been waived or released,. or has been satisfied. In the case in judgment it is clearly shown that, as between the appellant and the debtor, the lien was expressly reserved, and has not been waived, released, nor satisfied.
2. ESTOPPEL—*Ignorance of Misrepresentations—Intent that Representations Should be Acted on—Case in Judgment.*—In order to create an equitable estoppel, or an estoppel based on a party's conduct. it must be shown by the party claiming the benefit of the estoppel that he was ignorant of the truth in regard to the misrepresentations made, and that he was permissibly ignorant thereof. Furthermore, the representation made must have been made with the intention, either actually or reasonably to be inferred by the person to whom it was made, that it should be acted on. In the. case in judgment neither of these requisites exists, and the appellant is not estopped to set up her vendor's lien as against the appellees. The amount due the appellant was a part of the original purchase price of land for which a vendor's lien was reserved. It has never been paid, and the conduct of the appellant has not been such as to estop her from asserting her lien.

Argued at Staunton.    Decided at Richmond.

Appeal from a decree of the Circuit Court of Rockbridge county, pronounced March 19, 1897, in a suit in chancery wherein The Buena Vista Company was the complainant, and McClandish & Clowes, and numerous creditors of the company, were the defendants.

*Reversed.*

The opinion states the case.

*J. E. Edmunds,* for the appellant.

*Wm. A. Anderson* and *Winborne & Batchelor* for the appellees.

BUCHANAN, J., delivered the opinion of the court.

The Buena Vista Company purchased from the executors of Samuel F. Jordan, deceased, lands for which it agreed to pay $135,000. Of this sum $50,000 was paid in cash. For the residue three notes or bonds of equal amounts were executed, payable respectively in one, two, and three years, and to secure their payment a lien was reserved in the deed by which the property was conveyed. Afterwards, in a suit brought by S. F. Jordan's executors against S. F. Jordan's legatees, the executors were directed to collect the unpaid purchase money, which at that time amounted to about $51,000, and pay it over to the general receiver of the Circuit Court for Rockbridge county, in which court that suit was pending. The executors did not collect the purchase money, but turned over to the receiver the purchase money notes or bonds held by them. The money represented by these purchase money notes or bonds was due to various legatees of Samuel F. Jordan. In order to avoid confusion in the receiver's accounts with the several legatees, he took from the Buena Vista Company bonds for the precise amount to which each legatee was entitled in the fund, and held them as collateral to the purchase money notes or bonds. Of that fund Mrs. M. L. Jordan and her children were entitled to $26,607.80, and accordingly one of the collateral notes taken by the receiver was for that sum.

In March, 1891, Mrs. Jordan filed her petition in that cause, and asked that her individual interest in that fund be deter-

mined.   Pursuant to the prayer of the petition, a decree was
entered in March, 1892, fixing her interest at $10,600, and
directing the receiver, upon the collection of the bond of the
Buena Vista Company, held by him for the benefit of Mrs.
Jordan, to pay to her the sum of $10,000, so soon as he could
collect the same, and hold the other six hundred dollars ascer-
tained to be due her to pay costs.   Her reason for desiring its
collection, as stated in the answer of the receiver, was to get a
higher rate of interest upon it, and to avoid paying commissions
to the receiver for collecting and disbursing the interest on the
fund due her.

After the decree had been entered directing the $10,000 due
to appellant in her own right to be collected and paid over to
her, and whilst the receiver was corresponding with the debtor
company about its payment, that company, not being in a con-
dition to pay, made an arrangement with the appellant by which
it was to retain the money due her, and executed its bond to her
for that sum, in which it is stated that its payment is secured by
the original vendor's lien, and by a deposit in the hands of the
receiver of fifty thousand dollars of the first mortgage bonds of
that company held by him as collateral security for the payment
of the unpaid purchase money.

In December, 1896, The Buena Vista Company filed its bill
for the purpose of winding up its business.   In that suit an
account was directed to ascertain, among other things, the liens
upon the property of the company, and their priorities.

The commissioner reported that the $10,000 due the appel-
lant was a part of the original purchase price of the land, and
that, by taking the new note or bond therefor, she did not re-
lease the vendor's lien reserved to secure the payment of the
unpaid purchase money, and that her lien was of equal dignity
with that held by the receiver for the payment of the purchase
money due the other legatees of Samuel F. Jordan, deceased.

To this report exceptions were filed by the receiver, because

the lien of the appellant was reported as of equal dignity with the lien held by him as receiver. The court sustained that exception, and gave the debts due the receiver priority over that of the appellant.

From that decree this appeal was taken.

It is clear that the appellant, as between her and the debtor company, has a vendor's lien upon the land to secure the payment of her debt. This is expressly stated in the bond given her by the company for the $10,000 due her. But if there had been no such agreement between the parties, she would still have a vendor's lien. Her debt was a part of the purchase price of the land. A lien was reserved in the deed conveying the land for its payment. It has never been paid. There was no intention on the part of either the appellant or the debtor company when the arrangement was made by which the company was allowed to retain the money due her, that her lien should be released. A vendor's lien exists until it is clearly shown that it has been waived or released, or has been satisfied. *Jameson* v. *Rixey*, 94 Va. 342, and cases cited.

The receiver admits that, as between the appellant and the debtor company, her lien may be in full force, but that as to him and those he represents he insists that she is estopped from setting it up, and that her lien must be postponed until the purchase money due him as receiver shall have been fully paid.

The grounds of estoppel relied on by the receiver are that, after the decree was entered fixing the amount due the appellant, and directing him to collect and pay it over to her, and whilst he was endeavoring to collect it, the appellant executed a receipt to him, by which she represented to him that the amount due her had been paid or settled, and that by reason of such representation he had failed to collect the debt as he might and would have done out of other assets of the company, and thus have reduced the purchase money lien to the extent of $10,000, and thereby rendered secure the purchase money debts held by

him as receiver, which may not be fully paid if the debt of the appellant is held to be of equal dignity with those held by him.

The language of the receipt relied on is as follows: "Received of the Buena Vista Company ten thousand dollars (in part of the amount due me from the estate of Samuel F. Jordan, dec'd.) which amount I direct the general receiver of the Circuit Court of Rockbridge county to credit on a note given by the Buena Vista Company to said receiver for the sum of twenty-six thousand seven hundred and thirty-two dollars and eighty cents, said note dated January 1, 1891.

M. L. JORDAN.

Oct. 28th, 1892."

As before stated, after the decree directing the $10,000 due the appellant to be collected and paid to her, and whilst the receiver was making efforts to collect it, she made an arrangement with the debtor company by which it was permitted to retain the money due her upon the same security by paying a higher rate of interest. The president of the company informed the receiver that his company had made an arrangement with the appellant by which the money due her would not have to be paid at once, stated to him that the appellant wished him (the receiver) to prepare the necessary papers to carry it out, but did not give him the details of the arrangement. About the same time the appellant wrote the receiver a letter in which she uses the following language: "Will you please have the bonds made out and transferred to me so that the Buena Vista Company can pay me my interest promptly on the $10,000 which Judge McLaughlin ordered to be paid me. The company is not satisfied to pay out money until the arrangement is perfected." The receiver declined to make out the papers, or to transfer the bonds, as requested by the appellant. The president of the company afterwards informed the receiver that the arrangement between the company and the appellant had been perfected, and stated to him that the appellant directed that the

$10,000 due her should be credited on the note or debt. This the receiver declined to do without a writing from her which would be a voucher to him. The evidence tends very strongly to show that the receiver indicated the character of the writing he wished, and in accordance therewith the receipt was prepared, signed, and delivered to him. He credited the $10,000 on the note for $26,607.80 held by him as collateral for the benefit of the appellant and her children, as directed by the receipt, and, in making his next annual settlement as receiver, that sum was treated as having been paid to the appellant by the company, and is credited upon the $26,000 note, and the receiver thereafter is only charged in his settlements with the residue of that note. Although the $10,000 due the appellant had not been paid, it was proper to credit it, as directed by the appellant in her receipt, upon the $26,000 collateral note held by the receiver which represented the amount of the purchase money due her and her children. The new note executed to the appellant for $10,000, and due her in her own right, was a part of the sum represented by the $26,000 note, and when the debtor company executed to the appellant its obligation for the $10,000 it was entitled to have a like sum credited upon the $26,000 note, otherwise it would have had outstanding two notes, one for $26,000, and another for $10,000, aggregating $36,000, when it only owed to the parties who held the notes $26,000. No credit, however, for the $10,000 was placed upon the original purchase money notes held by the receiver, nor was the vendor's lien released upon the record to that extent by the receiver. The record shows that the receiver knew when the receipt was given him that the $10,000 had not been paid to the appellant, but that some arrangement had been made between the apppellant and the company by which it retained the money due her, but the terms of the arrangement were unknown to him until a few months before the suit was brought by the company for a settlement of its affairs.

One of the requisites necessary to create an equitable estoppel, or an estoppel based upon a party's conduct, is that the party who claims the benefit of the estoppel must show that he was ignorant of the truth in regard to the misrepresentation made; and must have been permissibly ignorant thereof. Bigelow on Estoppel, (5th ed.), pp. 570, 626; 2 Pom. Eq. Jur., sec 805.

The receiver in this case knew that the statement in the receipt that the appellant had received payment of the debt was not true, and although he did not know until long afterwards what the details of the arrangement between the debtor company and the appellant were, he knew that the object of the arrangement, so far as the debtor company was concerned, was to avoid the necessity of paying the debt at that time. Knowing that it had not been paid, he is presumed to have known that the lien to secure its payment remained in full force, unless the appellant had released or waived the lien. For, as we have before seen, a vendor's lien exists until it has been waived or released, or has been satisfied. The facts relied on did not justify him in believing that the lien had either been released or waived.

The appellant, not the receiver, instituted the proceeding for the ascertainment and settlement of the amount due her. If, after that amount had been ascertained and ordered to be collected, she saw proper to make an arrangement with the debtor company by which its payment was postponed, she had the right to do so. The proceeding was not instituted for the benefit of the receiver, but for her own benefit. It was not instituted to collect a part of the debt so as to increase the security for the other portion of it. She was satisfied with the security she had, as is shown by her relying upon the same security in the new arrangement made with the debtor company. The receiver must have been satisfied with the security held by him when the proceeding was instituted. If he had not been, he would have taken steps to have increased his security

or lessened the debt. In fact it does not appear that he collected the $600 due the appellant which he was directed to collect and hold for the payment of costs by the same decree which directed him to collect and pay the amount which the appellant was entitled to, although there was nothing to prevent him from doing so. The conduct of both the appellant and the receiver shows that neither doubted that the securities held for the payment of the whole purchase money lien was sufficient for that purpose, until afterwards, when the shrinkage in the values of the real estate and bonds of the debtor company caused them to doubt it.

Another requisite to an estoppel of this character is that the representation relied upon must have been made with the intention, either actually or reasonably to be inferred by the person to whom it was made, that it should be acted on. Bigelow on Estoppel, p. 628-9. There is no ground in this case upon which to base a suspicion even that the appellant intended to mislead or deceive the receiver as to the condition of her debt. There is nothing in the record to show that she knew, or had any reason to believe, that the receiver thought that her debt had been satisfied, or that the lien to secure its payment had been released or waived. As we have before seen, the receiver knew that the appellant's debt had not been paid nor satisfied; and knowing this, he had no right to infer or believe from her statements or conduct that the securities held for its payment had been released, or the right of appellant to subject them to the payment of her debt waived.

We are of opinion that the appellant is not estopped from claiming along with the receiver a *pro rata* distribution of the proceeds of the sale of the securities held for the payment of the unpaid purchase money, and that the Circuit Court erred in holding that the appellant was not entitled to anything on her debt from that source until the purchase money debt due to the receiver had been fully paid.

The decree appealed from must be reversed, in so far as it denies the appellant this right, and such decree entered by this court as the Circuit Court should have entered.

*Reversed.*