## Staunton.

### JAMES AND OTHERS v. UPTON AND OTHERS.

#### SEPTEMBER 15, 1898.

#### Absent, Cardwell, J.

1. DOWER—*Incomplete Equitable Estate of Husband—Section 2429 of Code.*—
   A husband who enters into an agreement for the purchase of land,
   takes possession of it, and pays part of the purchase price, is benefi-
   cially seised of the land to the extent that he has paid the purchase
   price, although he has not acquired the legal title; and his widow is
   entitled, under the provisions of section 2429 of the Code, to dower in
   the land, subject to the lien upon it for the unpaid purchase price,
   whether he died possessed of the land, or had aliened it during the
   coverture without her concurrence in the mode prescribed by law. If
   so aliened, however, the widow's right to dower is subject to the pro-
   visions of section 2278 of the Code.

Appeal from a decree of the Circuit Court of Middlesex
county pronounced August 26, 1896, in a suit in chancery
wherein the appellees, Benjamin Upton, Jr., and wife were the
complainants, and appellants and others were the defendants.

*Reversed.*

The assignment from Benjamin Upton, Sr., to his son, Ben-
jamin Upton, Jr., mentioned in the opinion of the court was
endorsed on the contract of sale from Miles to Benjamin
Upton, Sr., and is in the following words and figures, to-wit:

"For value received I hereby grant and convey unto Ben-
jamin Upton, Jr., his heirs and assigns all my right, title, in-
terest, and estate in and to the within described land, and in
and to the within agreement.

"As witness my hand and seal this 1st day of May, A. D. 1872."

The other facts sufficiently appear in the opinion of the court.

.  *T. G. Jones* and *Robert McCandlish*, for the appellants.

*W. W. Woodward* and *Pollard & Sands*, for the appellees.

BUCHANAN, J., delivered the opinion of the court.

On the 10th day of January, 1870, W. K. Gatewood, trustee, sold and conveyed to John A. Miles a tract of land in Middlesex county, in consideration of the sum of $4,000, part of which was paid in cash. Contemporaneously therewith, Miles executed a deed of trust upon the property to secure the payment of the deferred purchase money bonds, which amounted to $2,449.30.

On the 18th day of April, 1870, B. Upton, Sr., entered into an agreement with Miles for the purchase of the land at the same price, and went into possession of it.

On the 1st day of May, 1872, Upton, Sr., assigned all of his right, title, interest, and estate in and to the property, and in and to his agreement for its purchase, to his son, B. Upton, Jr., and in June following he assigned to him the bonds executed by Miles, and secured by the deed of trust to Evans, all of which had been paid by him (Upton, Sr.) out of the purchase money due from him to Miles. On the 2d of December, 1872, Miles and wife conveyed all their right, title, and interest in the property to B. Upton, Jr., in consideration of the sum of $1,321, paid by Upton, Sr. On the 1st day of September, 1875, B. Upton, Jr., conveyed to his brother-in-law, Joseph Small, of St. Louis, Mo., his interest in the land in consideration of the sum of $1,525, as stated in the deed. Small died

in the year 1884, without issue.   His heirs, on the first day of November of that year, conveyed all their interest in the property, in consideration of one dollar, to his widow, Susan Small, who has since intermarried with Samuel James.

In January, 1890, B. Upton, Jr., and his wife brought this suit against James and wife to subject the property to the payment of the bonds executed by Miles and secured by the deed of trust to Evans, trustee.   The bill, after giving a history of the sales and conveyances referred to above, alleges that Mrs. B. Upton, Jr., is now, after various assignments, the owner and holder of the bonds executed by Miles on account of his purchase from Gatewood, trustee, the payment of which was secured by the deed of trust to Evans, trustee; that Small, when he purchased, had knowledge of the existence of the deed of trust, and in his purchase undertook and expressly agreed that the property was and should be liable for the payment of the debt secured by it.

James and wife demurred to and answered the bill.

Mrs. B. Upton, Sr., during the progress of the cause, came into the suit by petition, claiming that she was entitled to dower in the property.   The complainants answered her petition, and denied her right to dower.

Upon a hearing of the cause the Circuit Court held that the widow of B. Upton, Sr., was not entitled to dower in the land; that Mrs. B. Upton, Jr., had, by virtue of the assignment of the bonds, secured by the deed of trust executed by Miles to Evans, trustee, a valid and subsisting lien, and directed the property to be sold for its payment.

From that decree this appeal was taken by James and wife, and the widow of B. Upton, Sr.

The first question that we will consider is whether the widow of Upton, Sr., is entitled to dower in the land.

When her husband purchased the land, he agreed to pay Miles the sum of $4,000.   Within a few months after he made his purchase, he learned of the deed of trust to Evans, trustee,

securing the $2,449.50 due from Miles on his purchase from Gatewood, trustee, and also of certain judgments docketed against Miles before he, Miles, sold to him. He thereupon consulted counsel, who advised him that to the extent that he paid off the debt secured by the deed of trust he would have an interest in the land superior to the judgments against Miles, but that in so far as Miles had acquired an interest in the land by paying the purchase price thereof, it could be subjected to payment of those judgments. He afterwards paid all the bonds secured by the deed of trust, and several of the judgments, and deducted the amount so paid from the purchase price, and paid the residue directly to Miles. All these payments were made by Upton Sr., before he assigned his interest in the land to his son, B. Upton, Jr., except, perhaps, a part of the amount paid directly to Miles, which may have been paid by him after his assignment to his son, but before Miles and wife, pursuant to the assignment, conveyed the land to the son.

When Upton, Sr., paid the bonds secured by the deed of trust out of the money which he owed Miles, and received credit therefor, the lien of the deed of trust was discharged. Upton, Sr., took no assignment of the bonds nor of the deed of trust, nor had he the right to have an assignment of either. The debt secured by the deed of trust was Miles' debt, was paid out of the proceeds of the purchase money due Miles for the land, and discharged the lien as completely as if Upton, Sr., instead of paying the bonds, had paid the money to Miles, and he (Miles) had applied it to their payment. *Gayle* v. *Wilson,* 30 Gratt. 166; *Brown* v. *Lapham,* 3 Cush. 551; Pomeroy's Eq. Jur., secs. 797, 1213; *Shepherd* v. *McClain,* 18 N. J. Eq. 128.

Of course, if the creditors of Miles who had liens inferior to the lien of the deed of trust, but resting on the land when Upton, Sr., purchased it, subjected the land to the payment of their liens, the lien of the deed of trust would be revived in equity in order to protect Upton, Sr., and those claiming under

him to the extent that he had paid the bonds secured by the
deed of trust out of the purchase money due from him to
Miles. But Upton, Sr., had no interest whatever in the bonds
secured by the deed of trust; and it was not within his power
to make any use of them, or of the deed of trust which secured
their payment, that could affect any right to dower which his
wife might have in the land.

It is insisted that she has no such right because her husband
was never so seised of the land as to entitle her to dower. No
conveyance of the legal title was made to the husband, nor
does it clearly appear that he had paid the entire purchase
price before he sold or assigned his interest in the land, though
he did pay the whole of it before his vendor conveyed it to his
assignee, or vendee. It seems to be conceded, and if it were
not it is clear, that although a husband may not have acquired
the legal title to land, if he has paid the entire purchase price,
and has a perfect equity, so that a court of equity would com-
pel a conveyance of the legal title, his widow is entitled to
dower. But where the husband has aliened the land before
acquiring the legal title or paying the entire purchase price so
as to perfect his equity, it is claimed that his widow has no
right to dower.

The decision of this question depends upon the construction
of sec. 2429 of the Code, which provides that " where a person,
to whose use, or in trust for whose benefit another is seised of
real estate, has such inheritance in the use or trust as if it were
a legal right, would entitle such person's husband or wife to
curtesy or dower thereof, such husband or wife shall have cur-
tesy or dower of the said estate."

Whether under that section the husband must have a perfect
equity and have the right to call for the legal title before his
widow can have dower in his equitable lands has not been de-
cided by this court in any reported case. In the cases of *Row-
ton* v. *Rowton*, 1 H. & M. 92, and *Claiborne* v. *Henderson*, 3 H.
& M. 322, it seems to have been assumed that the husband

must have a perfect equity to entitle his widow to dower, but that question was neither involved nor decided in either case.

In the first named case the majority of the court were of opinion that the widow had failed to prove the contract by which she claimed that her husband had acquired his equitable estate, and her bill was dismissed on that ground.

In the other case the rights of the parties vested before the act of 1785 went into effect, and the question was whether the widow was entitled to dower in her husband's equitable estate independent of that act, and the majority of the court held that she was not.

The manifest object of sec. 2429, which has been in force since January 1, 1787 (12 Henning's Statutes, at p. 157), was to abolish the common law rule that a widow could not be endowed in her husband's trust or equitable estate, and to confer upon her the same right of dower in such estate as if it were his legal estate.   2 Minor's Inst. (4th Ed.) 141; 1 Lomax Dig., side page 224.

The common law rule upon the subject, and the object and effect of the statute, are well stated by Judge Baldwin in his opinion in the case of *Wilson* v. *Davisson*, 2 Rob. 384, 405, &c.

"In the present state of our law," he said, "the right to dower springs from the substantial, not the formal, ownership of the husband.   At common law it is true the legal title only was regarded; and a mere legal seisin, without any beneficial ownership, enabled the wife to recover dower.   Thus the wife of a trustee who had the legal estate in fee, and the wife of a mortgagee after condition broken, had a valid title to dower. But the courts of equity corrected this injustice, and in such cases restrained the widow and punished her with costs if she attempted to recover by legal proceedings.   Another consequence of the disregard by the courts of common law of any but legal rights, was to refuse dower to the widow in trusts and other equitable estates, and consequently in the equity of redemption of a mortgage in fee.   This narrowness, instead of

being redressed, was followed by the court of equity, and still prevails in the English jurisprudence. But in Virginia, New York, and other States of this Union, it is corrected by legislative enactments. Our act of 1785" (now sec. 2429 of the Code) "gives dower in equitable, in like manner as in legal estates; and in this, as in other respects, the rules and incidents of legal estates are now applied to trust and mortgaged property. The equity of redemption of a mortgage in fee descends to the heirs of the mortgagor; and though the widow is not entitled to dower as against the mortgagee where the mortgage was executed before the coverture, or during the coverture with her concurrence in the mode prescribed by law, yet in either case she is entitled to dower in the equity of redemption; for of that, or what is the same thing, of the estate subject to the mortgage, the husband is to be considered as having died seised. *Heth* v. *Cocke and Wife*, 1 Rand. 344; *Swaine* v. *Perine*, 5 John. Ch. 492; *Hale* v. *James*, 6 John. Ch. 258. This is equally true of the vendee's right of redemption in regard to the vendor's lien. His wife is dowable of that, but of nothing more; or, what is in effect the same, she is dowable of the estate purchased, subject to the equitable encumbrance for the purchase money.  *  *  *  Thus it will be be seen that there is no longer any magic in the word *seisin*, by which the shadow may be made the substance, or the substance the shadow. A legal title in the husband is nothing as regards the wife's right of dower, unless accompanied by the beneficial ownership; and the beneficial ownership is everything, though separated from the legal title. But there can be no beneficial ownership in opposition to a paramount incumbrance, though there may be insubordination to it."

The object of the statute being to give the widow the same right of dower in her husband's equitable estate that she would have in it if it were a legal estate, the question in this case is, did B. Upton, Sr., have such a beneficial interest in the land when he sold or assigned it to his son, that if he had then held the legal title, subject to the lien for the unpaid purchase price,

his widow would have been entitled to dower in it in the hands of his alienee, subject to that lien?

In this State one of the common methods of securing payment of the purchase price of land, where credit is given for all or a portion of the price, is for the vendor to convey the land to the vendee, and expressly retain a lien thereon in the conveyance to secure the payment of the unpaid purchase price. Another mode is for the vendor to enter into an executory contract with the vendee for the sale of the land, and to retain the title to secure the payment of the unpaid purchase price. If the first method be followed, and, before the vendee has paid the entire purchase price, he die or alien the land, without his wife's uniting with him in the manner prescribed by law, there can be no question that his widow would be entitled to dower in the land subject to the lien upon it for the unpaid purchase money. If the last method be adopted, and the husband die or alien the land under like conditions, his widow must necessarily have the same rights of dower in the land as in the other case mentioned, unless we disregard what seems to be the plain meaning of sec. 2429. His beneficial interest in the land in each case is precisely the same. He is the owner of the land, subject to the encumbrance upon it for the unpaid purchase price. The only difference is that in the one case he has the legal title, and in the other the vendor holds the legal title in trust for him, subject to the lien.

Again, it would hardly be contended by any one in this State that, if a husband purchases a tract of land under an agreement for a conveyance of the legal title when the purchase money shall have been fully paid, and dies in possession of it still owing a part of the purchase price, his widow is not entitled to dower in the land, subject to the lien for the unpaid purchase money. Yet if that be true, how can it be held that she is not entitled to dower in it to the same extent if the husband alien it without her uniting with him in the manner prescribed by law?

In order to entitle his widow to dower, the husband must be seised of the requisite estate *during the coverture.* If such seisin does not exist as to his equitable estate until the purchase money is fully paid, and it is not paid before his death, how can it be held that he ever had the required seisin? His dying in possession of the property cannot affect the question. He either had, during the coverture, the necessary seisin to entitle his widow to dower in the land subject to the lien for the unpaid purchase money, or he did not. If he did not have such seisin, then one of the essential requirements for dower was wanting, and it was a matter of no consequence whether he aliened the land during the coverture, or died possessed of it, for in neither event would his widow be entitled to dower. If, on the contrary, he was so seised during the coverture that if he had died possessed of the land his widow would have been entitled to dower in it, subject to the lien for purchase money, he could not by selling it deprive her of that right, for nothing is better settled than that after the right of dower has once attached the husband cannot, without his wife's concurrence, defeat that right by an alienation of the land. 1 Lomax Dig. 129 (side page 107).

Not only has the husband no power to alien such property to the prejudice of his widow's right to dower, but so carefully has the law guarded her rights that where the land is subjected during the husband's life-time to the payment of the lien or encumbrance upon it which is superior to her dower rights, it is provided by sec. 2269 of the Code that "if a surplus of the proceeds of sale remain after satisfying said lien or encumbrance, she shall be entitled to dower in said surplus, and a court of equity having jurisdiction of the case may make such order as may to it seem proper to secure her rights."

We are of opinion, therefore, that a husband who enters into an agreement for the purchase of land, takes possession of it and pays part of the purchase price, is beneficially seised of the land to the extent that he has paid the purchase price, although he has not acquired the legal title, and that his widow

is entitled to dower in the land subject to the lien upon it for the unpaid purchase price, whether he die possessed of the land, or has aliened it during coverture without her concurrence in the mode prescribed by law.

A contrary rule would enable a husband to purchase land, take possession of it, pay the whole purchase price except some trifling sum, sell it without his wife's concurrence, have the legal title conveyed to his vendee, and thus defeat his widow's right to dower, in violation, as it seems to us, of the policy and the humanity of the law.

We are of opinion that the widow of Upton, Sr., has a right to dower in the land. Her right would have been subject to the lien for the purchase money remaining unpaid at the time of the sale of the land by her husband to his son, if it had been paid by the vendee or still remained unpaid, but inasmuch as it was afterwards paid by her husband, and the lien removed, she is entitled to dower in the entire land, subject to the provisions of sec. 2278 of the Code.

Upon the question of the right of Mrs. Upton, Jr., to subject the residue of the land to the payment of the claim asserted in the bill of complaint, the court is equally divided.

Two of the judges being of opinion that the record shows that Joseph Small, when he purchased the land, recognized the claim asserted by Mrs. B. Upton, Jr., as a valid lien upon the land, and expressly agreed that the land should be liable therefor as a part of the consideration to be paid by him, and that as between B. Upton, Jr., and Joseph Small, and those who held under him, the land subject to the dower of Mrs. B. Upton, Sr., is liable for its payment.

The decree complained of must be reversed in so far as it denies the widow of B. Upton, Sr., the right to dower in the land, and in other respects affirmed, and the cause remanded to the Circuit Court for further proceedings to be had in accordance with the views expressed in this opinion.

*Reversed in part.*