# Richmond

LAURA M. PENDLETON, ET ALS. V. MARGARETTE J. MEADE, ET ALS.

November 15, 1934.

Present, Campbell, C. J., and Holt, Epes, Browning and Chinn, JJ.

728

The opinion states the case.

*Victor L. Wells* and *Will H. Nickels,* for the appellants.

*Mack Coleman* and *S. H. Bond,* for the appellees.

BROWNING, J., delivered the opinion of the court.

G. W. Meade and his wife, Lucy M. Meade, to effect a partition or division of their real estate, in Scott county, Virginia, among their children, consisting of four sons and two daughters, executed on the 27th day of November, 1930, deeds conveying their lands to their sons, A. L. Meade, W. J. Meade and H. R. Meade. By the deed to H. R. Meade they conveyed to him two tracts of land, one containing sixty-two and three-fourths acres and another containing thirty-four and one-half acres. The considerations expressed in this deed were the division and allotment of the real estate of the grantors, their love and respect for their son, the grantee, and the further consideration that the grantee, their son, H. R. Meade, should pay $1,000 to each of the daughters of the grantors, viz: Laura M. Pendleton and Sarah J. Morris. The said sums of money were due and payable at the death of the grantors. Each of the daughters was described in the deed as the daughter and heir of the grantors. H. R. Meade was granted immediate possession of the first of the above described tracts of land, but the grantors retained full control of the tract of thirty-four and one-half acres during their natural lives.

The granting clause of the said deed is in the following terms:

"Witnesseth, That in consideration of the division and allotment of the real estate of the said G. W. Meade and Lucy M. Meade, parties of the first part, and the love and respect the said parties of the first part has for their son, the said H. R. Meade, party of the second part and the further consideration of two thousand ($2,000) dollars due and payable at the death of said G. W. and Lucy M. Meade as follows: One thousand ($1,000) dollars payable to the first parties daughter and heir Laura M. Pendleton and one thousand ($1,000) dollars, payable to the said first parties daughter and heir, Sarah J. Morris, the parties of the first part by these presents, do grant, bargain, sell and convey unto the said H. R. Meade, party of the second part, with covenant of general warranty of title all of the two following described tracts or parcels of land:"

G. W. Meade died on March 15, 1921, his widow, Lucy M. Meade, died December 5, 1930, and H. R. Meade died in July, 1931.

On December 17, 1926, H. R. Meade executed a deed of trust on the thirty-four and one-half acre tract of land to save harmless his two brothers, A. L. Meade and W. L. Meade, and J. Mitchell Daugherty, endorsers on the joint note of himself and his wife, for $500 payable to the Farmers Exchange Bank of Nickelsville, Virginia.

On May 10, 1929, H. R. Meade executed another deed of trust on the same tract of land to save harmless C. C. Broadwaters and E. L. Bond, endorsers on a like note for $350 payable to the Peoples National Bank of Gate City, Virginia.

H. R. Meade died without having paid his sister, Laura M. Pendleton, or the heirs of his sister, Sarah J. Morris, who predeceased him, the amounts, or any part thereof, which were provided for his said sisters by the terms of the deed of G. W. Meade and Lucy M. Meade, to him. He also died leaving unpaid the said notes which were the subjects of the deeds of trust referred to, as well as some other debts which were unsecured.

Sarah J. Morris died subsequent to her father's death and prior to the deaths of H. R. Meade and his mother, Lucy M. Meade. She left as her heirs at law Allie M. Gilmour, Lucy Morris Bell, Pearl Morris Walker and Flora Morris Keefer.

After the deaths of the parties referred to, Laura M. Pendleton and the heirs of Sarah J. Morris instituted suit against the widow and heirs of H. R. Meade to subject the lands which were conveyed to H. R. Meade to the payment of the $2,000 directed to be paid to them by H. R. Meade by the terms of the deed of conveyance referred to.

The widow of H. R. Meade filed a paper relinquishing her right of dower in the said lands, conveyed to her husband, and agreed that the proceeds of any right which she had might be applied to the payment of her husband's debts, in-

cluding the money directed to be paid to Mrs. Pendleton and Mrs. Morris.

The dower interest in both of the said tracts of land, if any there was, was attached by the Farmers Exchange Bank of Nickelsville, Virginia, to secure the payment of an unsecured note of H. R. Morris and his wife for $150.

A decree of reference was entered in the suit and the commissioner reported that the amounts payable to Mrs. Pendleton and Mrs. Morris by the terms of the deed referred to took precedence over the deed of trust debts mentioned and any other debts of H. R. Meade and his wife and over any dower right of H. R. Meade's widow sought to be asserted by her creditors.

It is to be noted that Margarette J. Meade, the widow of H. R. Meade, did not join in the execution of either of the deeds of trust, but she signed the two notes payable to the Farmers Exchange Bank of Nickelsville, Virginia.

Exceptions to the confirmation of the commissioner's report were taken by the deed of trust creditors of H. R. Meade and by the attachment creditor.

The trial court sustained the exceptions, holding that the lands of which H. R. Meade died seized were subject to the dower interest of his widow, which was impressed with a lien in favor of the Nickelsville bank, and that the two deed of trust debts, in the order of their dates of recordation, were superior in dignity of lien to the claims of Mrs. Pendleton and Mrs. Morris.

■ Upon the issues joined in this case, we may say, at the outset, that the terms of the deed by which the elder Meades undertook to make an equitable division of their lands among their children, do not come within the technical provisions of section 5183 of our Code.

That section, which is relied upon by the appellees, does not have reference to such a situation as is here presented.

In this case it is perfectly patent that H. R. Meade was allotted or granted lands in the division of his parent's landed estate, by them, which included the portions or patri-

mony of his two sisters, which by the very terms of the conveyance, were charges thereon, in terms of money.

The parents, grantors, state explicitly that their act was moved by their desire to divide and allot their real estate. Two of their allottees, their daughters, are given their portions in money rather than land, and their brother, H. R. Meade, is made by them the instrumentality for the effectuation of this purpose. Each of the daughters is described as "the first parties daughter and heir." The shares, in money, of these two daughters are postponed, in enjoyment, to the deaths of their parental benefactors, who reserve control of much the more valuable tract of land to themselves for their lifetimes. The operation of the deed is effected with this reservation. All of this is perfectly manifest by the terms of the instrument under which H. R. Meade took. To our minds, under the circumstances of this case, the provisions for the two daughters are as effectually made a charge on the lands as though they had been expressed in apter terms.

It will be noted that these deed of trust debts, growing out of the endorsement by certain of the appellees of H. R. Meade's notes, which were discounted by the holding banks, were not in existence when the estate of H. R. Meade in the lands was created, nor when the patrimony of Mrs. Pendleton and Mrs. Morris was secured to them.

It would be subversive of all of its principles if a court of equity should countenance the application of the shares of Mrs. Pendleton and Mrs. Morris in their parents' estate to the payment of H. R. Meade's personal debts, arising after the division and partition of the estate, and thus frustrating the expressed intention of their parents who created the estate.

We hold that H. R. Meade had no beneficial estate in the lands until the deaths of G. W. and Lucy M. Meade, at which time, only, could the conditions of the deed have been met, which would have invested him with such estate; the conditions referred to being the payment to his sisters of their shares in money as provided by the deed.

This being so, H. R. Meade's widow had no dower right in the lands, nor in the proceeds of the sale of them, except to the extent that such proceeds might be in excess of a sum sufficient to discharge and pay off the claims of Mrs. Pendleton and Mrs. Morris.

This question, however, does not arise here, for the lands at the commissioner's sale brought only $1,575.

We have found no case which has adjudicated the precise questions involved in this case, but, for decisions of issues closely akin to those here, see *Jameson* v. *Rixey,* 94 Va. 342, 26 S. E. 861, 61 Am. St. Rep. 726; *Harper* v. *Vaughan,* 87 Va. 426, 12 S. E. 785; *Wilson* v. *Davisson,* 2 Rob. (41 Va.) 384; *James* v. *Upton,* 96 Va. 296, 31 S. E. 255.

It follows that we reverse the decree of the trial court and hold that the claims of Mrs. Pendleton and the heirs at law of Mrs. Morris, in the proceeds of the sale of the lands sold in the suit, are paramount and superior to all of the antagonistic claims asserted herein, except those for unpaid taxes on the lands and those on the funds in the hands of the commissioner, if there be such.

The case is remanded to be further dealt with, as the chancellor may be advised, in accordance with this opinion.

*Reversed and remanded.*