JOHN L. MACAULEY, as Survivor, etc., Appellant, v. JOSEPH R. PALMER, Respondent.

*Court of Appeals, February 24, 1891.*

Affirming 53 Hun, 635, mem.

1. *Contract. Rebellion.*—Contracts between the citizens of the states in rebellion against the authority of the United States, made during the war and not in aid of the rebellion, were not invalid.
2. *Presumption. Payment.*—The presumption of payment, arising from lapse of time, is a question for the jury.
3. *Partnership. Special.*—In case of a particular or special partnership, the power of one to bind the other copartners extends, *it seems*, only to acts necessarily connected with the particular enterprise for which the partnership was formed.
4. *Principal and agent. Liability.*—Where a firm of agents make a sale for its principal, but, after receiving the price, returns it to the purchaser on being unable to deliver the goods, neither member of such firm is liable for the purchase money or its appropriation.

Appeal from judgment of the supreme court, general term, first department, affirming judgment dismissing plaintiff's complaint after trial at circuit.

*L. Laflin Kellogg*, for appellant.

*George Zabriskie*, for respondent.

O'BRIEN, J.—The plaintiff alleged that he is the surviving member of a firm which, in the year 1863, existed, composed of himself and his brother; that in November of that year the firm owned 167 bales of cotton at or near Brownsville, in the state of Texas, of the value of about $150,000; that in the month of November of that year the firm entered into an agreement with the defendant, Joseph R. Palmer, and one Robert B. Kingsbury, whereby the latter, " jointly and severally," promised and agreed to take the cotton and sell the same, and after deducting twenty-five per cent. of what was received from the same for their services, account for and pay over the balance to the plaintiff's firm; that they sold the cotton and received therefor the sum of $93,684.50, no part of which has been paid to the plaintiff or his firm, but has been appropriated to their own use. The parties were all, at the time of the agreement, residents of Texas, but at the time this action was commenced the plaintiff was, and for several years before had been, a resident of the city of New York, and the defendant of the state of New Jersey. After the commencement of this action against Palmer, Kingsbury died in Texas, where he resided, no process having ever been served on him in the case, and the issues arise solely upon Palmer's answer.

The allegations of the complaint, except the death of the plaintiff's copartner, are all denied and payment alleged. Then the six and ten years statutes of limitations of this state are interposed as a defense, also the four years statute of Texas and the six years statute of New Jersey. It is then alleged that the cotton was procured by the plaintiffs for the purpose of selling in aid of the rebellion.

The plaintiff was nonsuited, and the principal question here is whether there was any evidence which he was entitled to have submitted to the jury.

It does not appear from the record that the statute of limitations was considered by the court below as constituting a defense. Both parties left Texas within, at most, a few

months after the transaction. The plaintiff has never resided in New Jersey and the defendant did not remain in New York long enough for the statute to run. As the statute does not seem to be made a ground of defense in the argument for the defendant, we may dismiss that branch of the case without further examination.

It does not appear that the alleged illegal character of the contract entered into the decision of the case in the courts below. The point is not passed upon or referred to at all in the opinion of the general term. Generally it may be said that contracts between the citizens of the states in rebellion against the authority of the United States, made during the war and not in aid of the rebellion, were not invalid. Cutner *v.* U. S., 17 Wall. 517; Mitchell *v.* U. S., 21 Id. 350; Gavinzel *v.* Crump, 22 Id. 308; Conrad *v.* Waples, 96 U. S. 279.

In this case it was alleged that the cotton was procured by the plaintiffs for the purpose of sale in aid of the rebellion. It is unnecessary to consider now the legal principles applicable to a defense of this character, because the fact has not been found or conclusively established, and the evidence on the point was of such a character that the court could not pass upon the question as one of law. There was a question of fact for the jury to determine before the law could be applied. One of the grounds upon which the general term affirmed the judgment of nonsuit was that there was a presumption of payment arising from the lapse of time wholly independent of the statute of limitations. This presumption, however, is not one of law that is available to a defendant as a bar to the action on the claim, but one of fact for the jury.

Under the defense of payment the lapse of time may be considered in connection with all the facts and circumstances of the case, and it may sometimes with the other circumstances warrant the inference that the claim was paid. The nonsuit in this case cannot be upheld upon the ground that

from lapse of time there is a conclusive presumption that the claim was paid. The facts and circumstances disclosed leave no ground for supposing that any part of the proceeds of the sale of the cotton was ever actually paid to the plaintiff or the firm. The most that the defendant was entitled to on the question of the lapse of time, was to have it submitted to the jury as evidence in support of the defense of payment. Phillips on Ev., 4th Am. Ed., vol. 2, p. 171 ; 1 Greenleaf on Ev., 13 Ed. § 39; Jackson *v.* Sackett, 7 Wend. 94 ; Bean *v.* Tonnele, 94 N. Y. 381 ; Parker *v.* Foote, 19 Wend. 309; Wood *v.* Squires, 1 Hun, 481 ; Miller *v.* Smith, 16 Wend. 443 ; Jackson *v.* Hotchkiss, 6 Cow. 401 ; Mayor *v.* Horner, 1 Cowp. 109 ; Darwin *v.* Upton, 2 Saund. 175, note 2. If this action was brought against the defendant as agent or bailee of the cotton upon an allegation that it had been placed in his hands for sale and he had not accounted for it, then it would probably be incumbent upon him to account for its value, or excuse himself by proof that it was taken from his possession by some power that he could not resist. Roberts *v.* Stuyvesant Safe Deposit Co., 123 N. Y. 57. But the action was not tried, nor does the plaintiff in the action seek to recover upon that theory, but upon the ground that the defendant has received a specific sum of money, as upon a sale of the cotton, which he has not paid over. The judgment must stand unless there was evidence upon this issue to submit to the jury.

The defendant and Kingsbury undertook jointly to sell the cotton for the plaintiff's firm, and were jointly interested in the profits of the transaction as such. Their obligations to the plaintiff, and their power to bind each other in the conduct of the enterprise, must be determined upon the general principles applicable to partnership transactions. It was, however, upon the evidence a particular or special as distinguished from a general partnership, and the power of Kingsbury to bind the defendant extended only to acts necessarily connected with the sale and delivery of the cotton.

Williams *v.* Lawrence, 47 N. Y. 462 ; King *v.* Sarria, 69 N. Y. 25 ; Union Bank *v* Underhill, 102 N. Y. 336.

It appears from the evidence that on the 25th day of December, 1863, the cotton was at Point Isabel, a place on the Rio Grande river a few miles below Brownsville, and that the place was then in possession of the military forces of the United States. The defendant and Kingsbury sold the cotton to Viuda, Tarnava & Co., a firm at Matamoras, Mexico, as appears from the following paper and the testimony of witnesses in the case :

" BROWNSVILLE, Texas, *December* 25, 1863.

" *Viuda Tarnava & Co.:*

" Bought of Robert B. Kingsbury and Joseph R. Palmer, 167 bales cotton, weight 76,820 pounds, at thirty-one cents per pound in coin . . . . . . . . . . . . . . . . . $23,814 20
By cash on account . . . . . . . . . . . . . . . .   129 42

                                                    $23,684 78

" Received payment,
                    " ROBERT B. KINGSBURY,
                    " J. R. PALMER."

At the same time the sellers signed a paper directing Capt. Timothy Owen to deliver to their order the 167 bales of cotton " now held by him at Point Isabel subject to their order."

The business of the plaintiff's firm was conducted in the name of the plaintiff's deceased brother, James A. Macaulay. On the 28th of January, 1864, he addressed a letter to the defendants, which they received, in which he said : " You will please pay over to Mr. Jose San Roman any moneys that arise from the sale of the 167 bales of cotton made to you under my arrangement." Some time after the receipt of

this letter the defendant and his partner received from Viuda,. Tarnava & Co., to whom the cotton was sold, the whole of. the purchase price, and after deducting therefrom the sums. that they were, under the agreement with plaintiff's firm,. authorized to retain for expenses and commissions, deposited the balance in bags of gold coin, in accordance with plaintiff's instructions, as appears by this paper :

". Received, Matamoras, Mexico, April 10, 1864, from Robert B. Kingsbury and Joseph R. Palmer, ten thousand six hundred and seventy dollars ($10,670), for account of James A. Macaulay, in payment of net proceeds of one hundred and sixty-seven (167) bales cotton sold for his account.

" J. SAN ROMAN."

The purchasers of the cotton were engaged in business at Matamoras, in Mexico, and though, as appears, they had bought and paid for the cotton, it had not been delivered to them, and, in fact, never was delivered. San Roman was a merchant and banker, with a house at Brownsville and another place of business across the river at Matamoras. It seems that the $10,670 net proceeds of the sale of the cotton to Viuda, Tarnava & Co., was deposited in the Brownsville house. The failure to deliver the cotton arose from the fact that no permit could be obtained from the military authorities for its delivery, and the order of the sellers to Captain Owen to deliver to their order was disregarded. The purchasers not being able to obtain the cotton, and having parted with their money, instituted legal proceedings of some kind in Texas against Kingsbury and defendant. It does not appear very clearly just what these proceedings were, but at all events they resulted in the imprisonment of Kingsbury, the defendant having left the state of Texas about that time and before he could be arrested or served . with process. The plaintiff's brother, James A. Macaulay, had left the country for Cuba and Europe about the 1st of February

previous, and the plaintiff followed soon after. A few days after the money was deposited with San Roman, and after the defendant had left the state, Kingsbury, accompanied by a guard of federal soldiers, came to the place of business of San Roman, in Brownsville, and directed him to deliver the money deposited with him to the purchasers of the cotton. This direction San Roman complied with and returned the coin to the purchasers in the same packages in which it was received.

The evidence tended to show that when Kingsbury and the defendant sold the cotton it was upon the agreement, express or implied, that they should procure from the military authorities a permit for its delivery to the purchasers, or that the sale was upon that condition. They attempted to obtain the permit, but failed. In this condition of things Kingsbury had the power to bind the defendant by rescinding the sale and returning the money. While it is true that this power to bind the defendant would terminate when the joint enterprise was completed, it cannot be said that the business of the joint venture was completed until the cotton was delivered.

They had received the money from the purchasers in anticipation of such delivery, and not being able to comply with the prerequisite or condition of the sale, common honesty required that they should restore the money. This operated, under all the circumstances, to rescind the sale and discharge the defendant from liability for the money deposited with San Roman. He might, under certain circumstances, still be liable as bailee of the property, but, as already observed, this case is not brought for that purpose.

But a portion of the money received from Viuda, Tarnava & Co. was retained and applied by the sellers as their commissions. The evidence tends to show that this was also paid back to the purchasers by Kingsbury, but the testimony on that point is not conclusive, and if it was material in this case whether it was paid back or not the evidence on

that point should have been submitted to the jury. But as the sale was never completed by a delivery of the cotton, and, as it was rescinded by Kingsbury, then all the money received from the purchasers should have been restored to them, and if it has not been they are the only parties that are entitled to it or can complain.

It is claimed in behalf of the defendant that he has not received any part of it, and there is some evidence indicating that to be the fact; but if he has he should restore it to the parties who paid it in anticipation of the delivery of the cotton to them, an event which never was brought about.

In a word, the case stands as if the defendant and Kingsbury never contracted to sell the cotton and never received any money whatever for it. Then it would not be claimed that an action would lie for a sum of money received as upon a sale, because no sale was made and no money received. It does not appear what became of the cotton. The argument on both sides seems to assume that it was taken by the military, as it probably was. The burden of showing what became of it would rest upon the defendant if this was an action for its negligent loss or conversion. But we find no evidence in the case which would warrant the jury in rendering a verdict for the plaintiff for the money received from Viuda, Tarnava & Co., under all the circumstances of the case.

The judgment must, therefore, be affirmed.

All concur.