HUTTON et al. v. PEDERSON et al.

(Court of Civil Appeals of Texas. Amarillo. Jan. 4, 1913. Rehearing Denied Jan. 25, 1913.)

1. PAYMENT (§ 66*)—PRESUMPTION—LAPSE OF TIME.

Payment may be presumed from lapse of time less than 20 years, where there are other circumstances tending to show payment, but which in themselves would not establish payment.

[Ed. Note.—For other cases, see Payment, Cent. Dig. §§ 176–188; Dec. Dig. § 66.*]

2. TRIAL (§ 256*) — INSTRUCTIONS — REQUEST FOR FURTHER INSTRUCTIONS.

· Where a party thinks a charge is not specific, it is his duty to request a special charge making it more specific.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 628–641; Dec. Dig. § 256.*]

3. TRIAL (§ 192*) — INSTRUCTIONS — ASSUMPTION OF FACT.

Where there was no controversy upon the issue as to whether or not a note had been presented for payment between the dates named in a charge, the court did not err in assuming that fact in the charge.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 432–434; Dec. Dig. § 192.*]

4. BILLS AND NOTES (§ 499*)—PRESUMPTION OF PAYMENT—FACTS JUSTIFYING.

That five years and three months had elapsed between maturity of the note and the date of its presentation for payment and that the maker had been able to pay since its maturity were not a sufficient basis for a presumption of payment.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 1695–1697; Dec. Dig. § 499.*]

5. BILLS AND NOTES (§ 499*)—EVIDENCE—PAYEE'S POSSESSION.

The payee's possession of a note at the time of suit, in the absence of marks or indorsements showing payment, is presumptive proof that the note is unpaid.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 1695–1697; Dec. Dig. § 499.*]

6. BILLS AND NOTES (§ 499*)—ACTIONS—BURDEN OF SHOWING PAYMENT.

The maker of a note secured by a deed of trust on real estate suing to enjoin a sale under the deed of trust had the burden of showing payment either by direct or circumstantial evidence.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 1695–1697; Dec. Dig. § 499.*]

Error from District Court, Dallam County; D. B. Hill, Judge.

Action by P. M. Pederson and another against R. P. Hutton and others. Judgment for plaintiffs, and defendants bring error. Reversed and remanded.

Veale & Davidson, of Amarillo, and J. S. Bailey, of Dalhart, for appellants. W. B. Chauncey and Clifford Braly, both of Dalhart, for appellees.

HALL, J. On March 21, 1906, defendant in error Pederson executed and delivered to M. Willis his promissory note for $197.66, providing for interest and attorney's fees, payable at Dalhart, Tex., nine months after date, and on the same day executed and delivered to R. P. Hutton, as trustee, a deed in trust of certain real estate, situated in the town of Dalhart, to secure the payment of said note. Thereafter M. Willis died, and T. J. Willis, one of the plaintiffs in error, was appointed and qualified as administrator of the estate. On August 12, 1911, R. P. Hutton, as trustee, advertised the lots for sale under the deed of trust for the purpose of paying the note. September 5, 1911, P. M. Pederson and Mat Francis, as owners of the land in question, brought this suit against plaintiffs in error and against J. S. Bailey as attorney for Hutton, alleging that Pederson paid off the note in question about December 15, 1906, but failed to get a re-

lease of the deed of trust. They prayed for an injunction and for cancellation of the note, and the deed of trust, and also prayed for personal judgment against W. B. Slaughter in the sum of $220 and interest, upon the ground that on December 15, 1906, Pederson delivered to Slaughter a check, given him by Mat Francis for that amount, with which to satisfy said note, alleging that Slaughter agreed and promised Pederson to pay over said money to M. Willis. Plaintiffs in error answered by general demurrer, special exception, and general denial, and specially that W. B. Slaughter had no authority to receive said payment for said Willis, and that, if such payment was made to said Slaughter, the money had never reached the hands of Willis, or any one authorized to receive the same. There was a trial by a jury which resulted in a verdict in favor of the defendant in error, upon which judgment was rendered, canceling the note and deed of trust.

Plaintiffs in error by their first assignment complain of the action of the court in refusing to give their special charge No. 1, which was in effect a peremptory instruction to find for plaintiffs in error.

By their second assignment of error they complain of the action of the court in giving special charge No. 2, which is as follows: "You are further charged at the request of the plaintiff that if you find from a preponderance of the evidence that the note set out in plaintiff's petition has been paid to the payee in said note, or the owner or holder of said note, you will find for the plaintiffs, and in this connection you are charged that it is not essential that payment be shown by positive evidence, but may be shown by circumstances, and, in determining as to whether or not said note has been paid, you may take into consideration the length of time between the maturity of said note and the time that payment of same was demanded by the payee or owner or holder of said note, together with any circumstances, if any, tending to show the payment of said note." These two assignments may be properly considered together.

[1] The rule with reference to the presumption of payment from the lapse of time less than 20 years, as stated in 30 Cyc. 1276, is: "Payment may be presumed from lapse of time less than 20 years where there are other circumstances tending to show payment; that the lapse of time may be decisive in connection with other circumstances, although those circumstances in themselves would not establish the fact of payment."

[2] The special charge given is not as clear as it might have been, but it was the duty of plaintiffs in error to request a special charge making it more specific, and this they failed to do. Upon another trial the jury should be instructed in accordance with the rule above announced.

153 S.W.—12

[3] There was no controversy upon the issue as to whether or not the note had been presented for payment between the dates named in said special charge, and the court did not err in presuming that fact in the charge.

[4] It is contended under these assignments by appellant that special charge No. 2 was erroneously given because there were no facts when taken in connection with the lapse of time upon which the jury could presume that the note had been paid. About five years and three months had lapsed between the maturity of the note and the date of its presentation for payment. The facts proven, which were relied upon by defendants in error as circumstances to be considered in connection with the lapse of time upon which presumption of payment might be based, are the ability of Pederson to pay since the maturity of the note, and the fact that the note had never been presented for payment since its maturity until presented by the attorney of Willis, the administrator. In our opinion these facts are not sufficient. We glean from the record that some time between the execution of the note and its presentation for payment, M. Willis died, but the date of his death does not appear anywhere in the record. If his death occurred soon after the execution of the note, or before its maturity, that fact might in a measure explain the failure to demand payment. It seems that the note is secured by a lien on several town lots. The testimony of Pederson shows that he owned a section of land and a large number of cattle and other live stock during the time intervening between the maturity of the note and its presentation for payment. Unless it had been shown that during this time M. Willis was alive and was in need of money, the solvency of Pederson is not a circumstance of much weight to be taken in connection with the lapse of time, because Willis may have preferred to hold the note well secured against a solvent maker, and have the accruing interest, than have the principal, of the note paid. Another circumstance which we presume was relied upon was the evidence of Pederson to the effect that at the time he paid Slaughter or the bank the $220 check he delivered a note due him from M. Willis for $10, and that he had never heard anything of his $10 note, nor had he since been advised as to the disposition made of his check or the proceeds thereof. It appears that the note was not payable at any particular bank, and in delivering to Slaughter, or the bank of which Slaughter was an officer, the money to be remitted to Willis, Pederson made Slaughter and the bank his agents. The books of the bank were not introduced in evidence, and no officer or employé of the bank ever testified as to what the books showed with reference to the disposition of the check, except Slaughter testified that the check bore the

bank's paid stamp, dated December 15, 1906, but that the indorsement of Pederson on the check indicated that the money had been paid to him in person. Slaughter testified ·that he did not send the money to M. Willis.

[5] By the weight of authority, possession of a note by the payee or legal representative at the time of the suit, where there are no marks or indorsements on the note to show payment, is prima facie proof that the note is unpaid. 30 Cyc. 1268, and the case of Conner v. Holland, 2 Posey, Unrep. Cas. 406, seem to announce the same doctrine. The third assignment is therefore sustained.

[6] The burden was upon defendants in error to show payment, either by direct or circumstantial evidence. The testimony of Slaughter establishes the fact that the money, if given to him, was not sent to Willis, and, until payment to Willis or some one by him authorized to receive payment has been shown, defendants in error have utterly failed to establish the fact of payment by direct testimony. Since the circumstances introduced to be taken in connection with the lapse of time are not sufficient upon which to base a presumption of payment, it follows that the judgment must be reversed. In our opinion the case has not been fully developed, and it will therefore be remanded for another trial.

Reversed and remanded.