F. S. FINLEY et al., Executors, Appellants, v. RUTH THORNE, Executrix, Appellee.

No. 39506.

344

JUNE 24, 1929.

REHEARING DENIED DECEMBER 13, 1929.

*F. S. Finley, L. H. Salinger,* and *H. G. Jeffrey, Jr.,* for appellants.

*Morrison & Morrison* and *W. M. Keeley*, for appellee.

EVANS, J.—The case was before us upon a former appeal. 202 Iowa 681. On that appeal, only the question of the statute of limitations was before us. That appeal was from the order of the district court directing a verdict for the defendant on the ground of the statute of limitations. We held, on the appeal, that the evidence in support of the defense of limitations was not conclusive, and that, therefore, a verdict should not have been directed. On this appeal, a different question is presented. On the trial below, the district court eliminated the defense of the statute of limitations, and submitted to the jury the defendant's plea of payment. From an adverse verdict, and judgment thereon, the plaintiffs have appealed. The appeal is necessarily predicated upon orders of the court which were adverse to the appellant. These are confined to those affecting the defense of payment. Alleged errors are predicated upon two general grounds:

(1) That the court erred in its instructions in defining circumstantial evidence and the force and effect thereof.

(2) That the evidence in the record was insufficient to sustain the verdict.

Before proceeding to a consideration of the merits of the appeal, we have to consider two preliminary questions.

I. The plaintiffs perfected their appeal on March 27, 1928, and filed their abstract on July 25, 1928. Their argument was due to be served on December 7, 1928. It was not so served.  The appellee filed a motion to affirm or dismiss for such failure. This motion was resisted by a showing of excuse. Appellants also filed a motion for a continuance over to the January, 1929, term, and this was granted. Ruling was reserved, however, on the motion to dismiss, and it was ordered that the motion be submitted with the case, without prejudice to the right of the appellee. We have carefully read the showing of excuse and the counter showing. It is somewhat voluminous, but we shall deal with it briefly. The case was tried in Washington County. The active attorney for the appellants resided in Carroll County. For the purpose of preparing his brief and of checking his abstract, he desired copies of the exhibits. Some

difficulty was encountered in obtaining them. A correspondence resulted between opposing counsel. Letters on the subject were also written by appellants' counsel to the trial judge. In response to the letters of counsel for the appellants, the counsel for appellee courteously agreed to procure copies of the exhibits to be made for the counsel of the appellants. Considerable unavoidable delay and some misunderstanding resulted, however, before this was done. The correspondence extended from August to the latter part of October. The circumstances were such as tended naturally to delay the preparation of the argument. In the enforcement of our rules of practice, we have aimed always to give due consideration to the well known fact that an attorney in active practice is confronted with many exigencies in meeting the assignments of different courts. Not infrequently he is due in the district court and in the Supreme Court at the same time. The excuse shown by the appellants in this case is as meritorious as the average. A harsher rule of enforcement would work hardship upon attorneys and upon clients. Where no bad faith or actual neglect is involved, we deem our course an advantageous one to the bar as a whole, and to the clientage. What happened in this case could happen to any attorney, without actual negligence. The motion to dismiss or affirm for failure to file argument in time is, therefore, overruled.

II. The appellants filed an abstract, which purported to contain so much of the record as pertained to the single issue submitted by the court to the jury. That part of the record  which pertained to issues not submitted by the court and not complained of by the appellants was professedly omitted. The appellee filed a denial of the correctness of the abstract. She asks that the appellants' abstract be disregarded because of its omissions. She did not supply by amendment any portion of the record alleged to be omitted, nor has she supplied any correction of mistakes alleged to have been committed by the appellants. She has also assigned certain errors alleged to have been committed by the trial court against her, and she asks that these errors be considered and be offset against the errors assigned by appellants. Instead of filing an amended abstract, she refers us to the original transcript on file in this court.

In this attitude, counsel for appellee have misconceived the scope of the appeal and of the rights of their client therein. Under our rules, the appellant is forbidden to incorporate in his abstract any matter not pertinent to the errors presented for review. The abstract filed by him will be presumed to contain all the pertinent record, in the absence of a contrary showing by the appellee. A mere denial of the abstract by the appellee, without more, will avail nothing. The function of a denial is to be a basis for an amended abstract. Such denial must be attended with an amended abstract, which shall purport to correct the alleged mistakes and to supply the alleged omissions.

It avails nothing to the appellee to refer us to the transcript of the record for the evidence which she should have included in an amended abstract. The only function of a transcript in this court is that of arbiter between contradictory abstracts of the litigants. We refer to the transcript only to determine which abstract presents the correct version of the record. If, therefore, the appellee were entitled to be heard on alleged cross-errors, she would have to fail for lack of an abstracted record in support thereof. We may add that, even though she had abstracted the record, yet she would not be entitled to a  review of the orders of the court that were adverse to her. Whatever the errors of the court in ruling against her, they resulted in no prejudice to her. She won her case, nevertheless. Only the appellants appealed, and only the appellants were entitled to appeal.

It is true that, where the record discloses on its face that the appellee was entitled, in any event, to a directed verdict by the court, we will sustain the judgment below, notwithstanding error in the record. But this is not saying that the appellee in a law action who has obtained a favorable verdict from the jury is entitled to array error against error, for the purpose of affirming a judgment.

The argument for appellee is that the court erred in withdrawing from the jury the issue of the statute of limitations, and that the appellee was entitled to win on such issue. If we

assume that the court erred in withdrawing such issue, how can it be ascertained here that the appellee would have won a verdict thereon? If the appellee had lost the verdict, she could have appealed. The most she could obtain by such appeal would be a new trial. The appellants did lose the verdict, and have appealed. The most that they can get is a new trial. In such a case, the new trial opens up every issue to both parties. On a new trial, no ruling of the district court in the former trial is to be deemed a prior adjudication. The judgment being set aside by reversal, the former adjudication is thereby lifted. Upon a retrial, the sitting judge carries the responsibility for every ruling which he makes, regardless of the views of previous sitting judges. This is one of the fundamental reasons why no provision is made for a review of errors in a law action in favor of the successful litigant. If it be true, therefore, that the court erred in withdrawing from the jury the issue of the statute of limitations, defendant still has, nevertheless, the right to be heard thereon in the district court if a new trial be granted to appellants. She has neither the right nor the need to be heard thereon in this court unless and until she loses her case in the district court.

III.   The notice of appeal was not served in time to operate as an appeal from the judgment. It was served in time to operate as an appeal from the order of the court overruling a motion for a new trial. The motion for a new trial was quite comprehensive and specific, and the appeal therefrom serves the practical purpose of an appeal from the judgment; and we shall have no occasion to differentiate between the rights of appellants under an appeal from the judgment and their rights under an appeal from the order denying a new trial.

The errors assigned and argued as grounds for reversal may be reduced substantially to two propositions:

(1)   That the evidence in the record was not sufficient to sustain the verdict.

(2)   That the court erred in defining circumstantial evidence, and erred likewise in permitting the jury to consider certain specific circumstances as evidence of payment of the note.

Particular reference is had here to the long period of time

which had elapsed before any right was asserted upon the note. The reasons for and against these two propositions necessarily blend, to a large extent, and much that may be said concerning one will apply to both.

The note sued on is as follows:

"The Cart-Leon Hotel
"Independence, Kansas.
"Nov. 26, 1904.

"Seven years after date I promise to pay to the order of W. R. Jeffrey, at the Washington County Savings Bank of Washington, Iowa, the sum of ($2,250.00) Twenty-two hundred fifty 00-100 dollars with interest at 6 per cent per annum past due interest to draw the same rate as the principal.

" 'The Shaw Oil Company'
"Clifford Thorne"

The question submitted to the jury was whether this note had been in some manner satisfied during the lifetime of the parties thereto. The burden was placed on the defendant to  prove the affirmative. The evidence of payment was circumstantial. Both parties to the note were dead. Jeffrey, the payee, died in ————, 1922, and Thorne, the maker, died about one year thereafter. The death of the payee occurred some eighteen years after the making of the note. No indorsement of payment of interest or principal was ever made thereon. During all that period of time, both the interest and the principal could have been collected upon demand, according to its terms, if the note had been a subsisting obligation. For the larger part of that period, both parties lived in the town of Washington, where Thorne continuously owned real estate subject to execution and sufficient to pay the debt.

The circumstances attending the making of the note which appear in the record are meager. It does appear, however, that, in 1904, a certain corporate enterprise was in existence, known as the Washington Oil & Gas Company, principally owned by residents of the town of Washington. Jeffrey was one of its principal promoters, and was its large creditor. It owned certain oil prospects in the oil region of Kansas, not far distant from Independence in that state. Another oil company figures

in the evidence, known as the Shaw Oil Company. Thorne was a representative, and perhaps a promoter, of that company. In November, 1904, Thorne, who was an attorney, and Jeffrey went together to the oil fields. While there, Jeffrey sued his company, Washington Oil & Gas Company, on his claim against it, and Thorne was his attorney. A stipulation of settlement of the suit was entered into, but its terms do not appear in the record. Some negotiations were had whereby the Shaw Company purchased or agreed to purchase certain equipment of the Washington Oil & Gas Company. The terms of these negotiations do not appear. The evidence tends to show that the Washington Oil & Gas Company ceased business as of this time, and that there was some understanding with the Shaw Oil Company, not only that it would purchase equipment, but that some of its stock would be purchased by the stockholders of the Washington Oil & Gas Company. The Shaw Oil Company was the first-named maker of the note in suit.

It appears by the direct evidence of the witness Matthews that, in February, 1905, there was a meeting of stockholders of the Washington Oil & Gas Company in the town of Washington, where both Jeffrey and Thorne were present. Jeffrey reported to the stockholders present upon his trip to the Kansas oil fields. The details of this report, as testified to by Matthews, are somewhat meager. The substance of his report was that the Washington Oil & Gas Company had failed. He also reported that he had sold or agreed to sell the equipment of the company to the Shaw Oil Company. He also reported a need for money, and a very indefinite arrangement looking to the purchase of stock in the Shaw Oil Company by the Washington Company stockholders, to the extent of one fourth of their holdings in the Washington Oil & Gas Company. This arrangement seems to have been approved by the Washington stockholders. Matthews, as one of their number, collected the amount of money necessary to purchase such shares, and delivered the same to Jeffrey. Jeffrey obligated himself to take $1,875 worth of stock in the Shaw Oil Company. Later, shares in the Shaw Oil Company were issued and delivered to these former shareholders of the Washington Oil & Gas Company. The evidence of Matthews would warrant a finding that this new purchase of shares in the Shaw Oil Company by the stockholders of the Washington

Oil & Gas Company was transacted through Jeffrey, and that he had in his hands all the purchase money, and that he either paid the same to the Shaw Oil Company for the shares issued, or rendered account thereof in some other manner.

This circumstance is relied on by the appellee as tending to show a situation wherein Jeffrey might naturally have turned the note which he held against the Shaw Oil Company in payment of these shares, and retained for himself the money actually paid by the stockholders. The amount involved in the purchase of said shares was more than sufficient to have paid such note. One answer by appellant to this contention is that the note was not due. It had been drawn payable in seven years from date. It is true, therefore, that Jeffrey could not, as a matter of law, have exercised a right to turn the note upon the purchase price of the shares. If the note had been due by its terms, then Jeffrey would have been a debtor to the Shaw Oil Company for the shares to the amount of the purchase price thereof, and would have been its creditor on the note for $2,250. In such a case, a legal presumption would arise that debit and credit had been offset, and it would be decisive of this case. But because the note was not due, the appellee has no benefit of such presumption. However, the force and effect of the circumstance are by no means wholly destroyed. The absence of legal presumption under a given state of facts does not necessarily forbid a jury to draw appropriate inferences of fact, quite as far-reaching as legal presumption would have been. If legal presumption were present, there were no need of a jury finding. The foregoing is a principal circumstance in appellee's case. It may be said that the appellee's case stands upon two legs, and this is one of them.

The other leg consists of the mutual attitude of Thorne and Jeffrey with reference to this note for a period of 18 years after the foregoing transaction. It is claimed that such attitude was wholly inconsistent with the idea that the note continued as a subsisting obligation. Jeffrey was a competent business man, of more or less banking experience. The evidence shows that he was a diligent collector. No reason is suggested, in argument or otherwise, as an explanation of the failure of Jeffrey to collect this note. Though there is no direct evidence that Jeffrey did or did not request payment of any part of the note at any

time thereafter, the circumstances as a whole would warrant a jury finding that he never thereafter requested payment or attempted collection. The appellants rely solely upon the legal presumption of the validity of the note. It is urged that the due date of the note accounts for seven years of the delay. By the terms of the note, interest was payable *annually*. The first default, therefore, occurred in November, 1905, and was repeated every successive year until the due date. The note was found among the papers of Jeffrey after his death. The record shows inferentially that there was some correspondence (not appearing in the record) between the executor and Thorne. The note was sent to the witness Keck. Keck testified as follows:

"The note in suit was sent to me to be submitted to Mr. Thorne for the inspection, evidently growing out of some previous correspondence. He called at my office and looked at the instrument when I handed it to him, and he said he couldn't recall in just what connection it was made, but that he was going to Des Moines, and from there he expected to return home, and he would go through his files as soon as possible, and take the matter up with Mr. Finley. This was about the 1st of April, 1923."

In October, 1918, Thorne became a resident of Chicago, and so continued until the death of Jeffrey. This fact tolled the statute of limitations. He did not, however, dispose of his real property in Washington County. He often visited there, and met Jeffrey there. Notwithstanding his change of residence and its legal effect upon the statute of limitations, the practical fact was that Jeffrey could have enforced collection of the note, if valid, at any time in Washington County.

The foregoing is perhaps a sufficient general outline of the circumstances relied on by the appellee.

It is earnestly urged by the appellants that such circumstances are wholly inadequate, and that they are not inconsistent with the existence of the note as a subsisting obligation. It is also urged that the lapse of time should not be deemed a circumstance at all tending to prove payment, and that the court erred in its instructions in permitting the jury to consider it such. The argument is that the law prescribes the period of limitation,

and that no shorter period of limitation is available against the holder of the note.

If the appellee must necessarily rely upon the statute of limitations and the legal presumption arising therefrom, the argument would, of course, be good. But the appellee does not necessarily rely upon such legal presumption. She relies at this point upon the inferences of fact which may properly be drawn by the jury from the circumstances adduced by her in evidence. As we have already said in connection with the possible offset, the absence of legal presumption will not necessarily forbid inferences of fact by the jury, which may be quite as effective as a legal presumption. The real significance of the circumstances at this point is not merely the failure of Thorne to pay within the period of limitation. It is, rather, the mutual attitude of both parties toward this note, as indicated by the circumstances. The mutual attitude thus disclosed is suggestive of a mutual understanding that Thorne was not indebted thereon. Such an inference is invited and strengthened by the long period of time during which such mutual attitude has been maintained. The candid mind of the juror naturally inquires why payment was not sooner requested by Jeffrey or made by Thorne, if the note was deemed by either of them to be a subsisting obligation. The plaintiffs were under no legal burden to answer this question. They had a right to rely upon legal presumption. But their failure of explanation, nevertheless, left the force of the circumstance unabated. In relying upon their legal presumption, without explanation of the significant circumstance herein stated, the plaintiffs subjected themselves to the possibility of such unfavorable inference as the jury might draw from the unexplained circumstance.

The case presented on this record bears a striking similarity to that of *Hubenthal v. Gibbons,* 168 Iowa 630. Our discussion in that case is applicable to the facts herein, and our holding therein is quite conclusive of the principal questions argued herein.

Action was predicated in that case upon a cause of action originating more than 20 years prior to demand thereon. In the meantime, the defendant had become a nonresident of the state, which fact tolled the statute of limitations. In that case, the defendant pleaded payment, and relied upon circumstances

quite similar to those involved in this record. The evidence in that case disclosed that the parties knew each other well, and met each other often during all the intervening years, and that no claim had ever been made by the plaintiff on said alleged cause of action. The defendant asked the court to instruct the jury that such fact was proper for their consideration, as bearing upon the question of payment. The court failed to give the instruction, and error was assigned upon such refusal. We said in that case:

"The unique thing about this case is that for nearly thirty years the transaction involved was treated by all the parties as closed. Its details have been so completely obliterated from the memories of all the participants that they cannot now be recalled. Henry Bank, now judge of the district court, had something to do with the transaction, but is now unable to remember any detail. Collins remembers nothing except that there was an attachment against his property, and that Gibbons in some manner obtained a release of it. Substantially all that Hubenthal can remember is that the bank asked him to sign the note with Gibbons. The defendant also had completely forgotten the transaction, but has refreshed his memory concerning it since the claim was made against him. This was the state of affairs when the plaintiff made his first claim against the defendant in August, 1907. He had never, prior to that time, claimed to the defendant that he had paid such note, nor had he ever referred to the subject. In December, 1880, Gibbons became a resident of Chicago, and has continued such residence ever since. The statute of limitation, therefore, is not available to him. Notwithstanding his residence in Chicago, he visited his relatives at Keokuk annually. He and Hubenthal were personal friends. He claims to have conversed with him often, if not usually, on such visits. He appears to have had property in Keokuk. When he removed to Chicago, he left no unpaid debts at Keokuk, unless it be this one. His Chicago address was known to or was readily ascertainable by Hubenthal. He arose to prominence in Chicago, and has been for many years a judge of the circuit court there. No reason appears in the record why Hubenthal could not have collected any valid claim from him by mere request, or by action. No explanation is given of the silence of 27 years. * * * We think that the re-

quested instruction was peculiarly appropriate to the evidence in the case. Except for the nonresidence of the defendant, the law would have conclusively presumed payment, by reason of the lapse of time. Because of the nonresidence, the defendant was not entitled to this conclusive presumption. *But under the circumstances shown, the long silence of the plaintiff was very significant, and clearly warranted an inference by the triers of fact that the debt had in some manner been satisfied.* It was clearly the right of the defendant to have the attention of the jury directed to such fact. In the light of the long acquiescent conduct of all the parties to the contract, the facts shown in support of the defense are very persuasive. It is not readily conceivable that such a transaction could have been so completely forgotten by all the parties in interest if it had not been closed in some manner. So far as appears, the plaintiff never would have awakened to his cause of action, were it not that, in 1907, the Commercial Bank failed, and went into bankruptcy. This note was found among other old papers, and was delivered to the plaintiff. Thereupon he promptly drew on the defendant for $400 through a Chicago bank. We think it clear that the defendant was entitled to the requested instruction, and that its consideration by the jury was highly important to a just determination of the case.''

Closely in point, also, is our recent case of *Wilson v. Else,* 204 Iowa 857. In that case, the district court instructed the jury on this question substantially to the same effect as did the district court in the case at bar. We sustained the instruction, on appeal. We said:

''It is the quite universal rule that lapse of time may be decisive, in connection with other circumstances, although those circumstances in themselves would not establish the fact of payment. See *Hutton v. Pederson* (Tex. Civ. App.), 153 S. W. 176; *Macaulay v. Palmer,* 125 N. Y. 742 (26 N. E. 912); *Dowling v. Hastings,* 211 N. Y. 199 (105 N. E. 194); *Jameson v. Rixey,* 94 Va. 342 (26 S. E. 861); *Graves v. Stone,* 76 Wash. 88 (135 Pac. 810). This rule is founded on experience in the ordinary course of business and of human affairs, and finds its legal justification in the interest of repose and the ending of litigation. It is founded upon the rational ground that a person

naturally desires to possess and enjoy his own, and that an un-explained neglect to enforce an alleged right for a long period casts suspicion upon the existence of the right itself.''

Our holding in the cited cases is quite pertinent to the case at bar. It upholds the substantial character of the circum-stances, and justifies the trial court in instructing the jury on the subject. We see nothing to be gained by repeating the for-mer discussion. We think the circumstances shown in this record are not only sufficient, as a matter of law, to go to the jury on the question of payment or satisfaction, but we think also that they are of a very persuasive character. It is not readily conceivable that a careful business man would carry such a note for such a time without ever requesting payment or concerning himself thereon. It is quite as difficult to con-ceive of a solvent maker who would neglect a subsisting note for such a length of time, necessarily knowing that interest was accumulating thereon. Surely such a mutual attitude could not exist unless there were some special reason, explanatory thereof. As we read the record herein, brief as it is, we think no disinterested mind could believe otherwise than that in some manner the note in suit had been satisfied. The fact that the circumstantial evidence is not sufficient in detail to prove the specific time and place is not controlling. The details in the case at bar are quite the equivalent of those in the cited cases. It is our conclusion, therefore, that the appellants were not entitled to a directed verdict.

IV. The principal attack upon the instructions of the court was made upon Instruction 7, which was as follows:

''In passing upon the only issue submitted to you, which is payment or nonpayment of the note, Exhibit G, you may take into consideration the relationship of the parties as to their business surrounding the parties as established, if established, at the time of the execution of Exhibit G; the evidence as shown, if shown, as to their connection or the connection of either one of them with the Washington Oil & Gas Company; their con-nection or the connection of either of them with the Shaw Oil Company; the fact, if you find it to be a fact, that the plaintiff's decedent, W. R. Jeffrey, had brought suit against the Washington Oil & Gas Company; the transfer, if any, of the machinery of the

Washington Oil & Gas Company to the Shaw Oil Company, as shown, if shown; what, if any, transaction occurred subsequent thereto between the deceased W. R. Jeffrey, and the stockholders of the Washington Oil & Gas Company, as shown, if shown; what, if anything, was said by the said W. R. Jeffrey, deceased, with reference to any of the said transactions, as shown, if shown; and the payment of any money to the said W. R. Jeffrey, deceased, as shown, if shown; and together with all these facts, you may consider the length of time that elapsed from the execution of said note and from its due date to the time of the death of the said W. R. Jeffrey; also as to what the evidence shows, if shown, *as to the acts and statements and conduct of the deceased Clifford Thorne prior to and at the time and subsequent to the execution of Exhibit G; all as bearing upon the question as to whether the said note was paid and settled before it was filed against the estate of the said Clifford Thorne."*

It will be seen that what we have already said is responsive to the complaint against all of Instruction 7 except the last clause thereof, which we have italicized above.

It is argued that the court permitted the defense to show the self-serving conduct of the maker of the note in proof of its payment. This is not a proper interpretation of this part of the instruction. The appellants themselves put in evidence the conduct of Thorne when the note was exhibited to him by Keck. The appellants were entitled to have that evidence considered. Presumptively, that evidence was introduced for that purpose. There was no other evidence in the record pertaining to the conduct of Thorne.

The foregoing comprises the points most stressed by appellants. Other points argued are so closely related to these that what we have already said is quite determinative of them.

The judgment below is, accordingly,—*Affirmed.*

ALBERT, C. J., and FAVILLE, KINDIG, and GRIMM, JJ., concur.

WAGNER, J., not participating.