Christian, J.,
delivered the opinion of the court.
This is an appeal from a decree of the Circuit court of the city of Richmond. A brief statement of the facts disclosed by the record is necessary to a proper understanding of the legal question presented for the consideration of the court.
On the second day of December, in the year 1867, James Lyons, Esq., as special commissioner of said Circuit court, under a decree, entered by that court, in a certain chancery cause therein pending, in the name and style of “Scott and wife v. McKildoe's heirs,” sold at public auction, a lot of land located at the south-east corner of Marshall and Third streets, in the city of Richmond, of which the appellee, Adolph Beutel, became the purchaser for the sum of $4,037 75. The sale was approved by the court; and all of the purchase money having been paid, the said special commissioner was directed to execute and deliver to the purchaser a deed with special warranty, conveying to him the said lot so purchased. A deed was accordingly executed by the said special commissioner, conveying to Beutel the said real estate, describing it with proper metes and bounds. But the deed thus executed and tendered to Beutel, contained the following reservation: “Reserving to the tenants of the lot adjoining on the east the perpetual use of the culvert now running from that lot through a part of the lot hereby conveyed into a culvert under Marshall street.” This deed Beutel declined to accept, upon the ground that “ it contains conditions and limitations in regard to the right to the enjoyment of the property which were not contemplated in any of the pro *3 ceedings in said suit, nor in the terms of sale as advertised, or as stated at the time and place of sale.” He thereupon filed his petition in said suit, setting forth the facts connected with the sale and purchase of said the situation of said culvert, and other facts, to show that he purchased the same without any reservation of any kind whatsoever, and that such reservation as the one set forth in the deed tendered him by the said special commissioner would materially lessen the value of the property.
To this proceeding, the said special commissioner, and the heirs of McKildoe, owners of the adjoining lot, are made parties. The heirs filed their answer to this petition, in which they claimed “that the culvert referred to was constructed in the life-time of James McKildoe, (from whom they derived title,) either by him or his predecessor, and was in use by the occupants of the lot, and has been in such use ever since, until the sale to the petitioner, which covered a space of more than twenty years; the said McKildoe having died in the year 1846; that the first use of said culvert was to carry off the water from a well on the lot purchased by the petitioner, but was afterwards used to carry off the water from the contiguous lot, which was and still is owned by respondents ; and the culvert was thus openly and visibly used and employed when the said lot was purchased by the petitioner ; and he purchased, therefore, with full knowledge of it.”
The cause came on to be heard, by consent, at February term, 1869, when it was ordered “that the matters stated in said petition, exhibits and answers, be referred to one of the commissioners of the court, to enquire and report thereon to the court.” The commissioner, to whom the matter was referred, examined a number of witnesses, and reported their evidence to the court, together *4 with his own opinion, that upon the pleadings and'evidenee in the cause, “ the purchaser, Beutel, is entitled to a deed, free from the reservation of the use of the eulinserted in the deed of the 8th July, 1868.”
On the 25th of March, 1870, the said Circuit court entered the following decree :
“ The court being of opinion that the purchaser, Adolph Beutel, is entitled under the decree .in this cause, entered July 20th, 1868, to a deed to the property purchased by him and referred to in these proceedings, free from the reservation of the use of the culvert inserted in the deed of the 8th of July, 1868, to him from the special commissioner, and free from all right of any person hut himself to use the said culvert, running from near the well on the lot bought by him to the public culvert under Marshall street, doth overrule the exceptions to said report, and doth approve and confirm the said report ; and doth adjudge, order and decree that the said James Lyons, special commissioner, shall make, sign, acknowledge and deliver to said Beutel a deed, conveying to him, the said Beutel, with' special warranty, the land in the said petition mentioned, free and clear of the reservations aforesaid, and. all other reservations inconsistent with the full, free and absolute ownership and enjoyment of said land.”
It was from this decree that an' appeal was allowed to this court.
The court is of opinion that there is no error in the decree of the said Circuit court of the city of Bichmond.
It is conclusively proved that when the lot in question was sold by commissioner Lyons, there was no notice to Beutel of the claim of the appellants, or any one else, to the use and enjoyment of any easement whatever; and the sale was made without any reservation whatever. *5 Wellington G-oddin, the auctioneer who sold the properly, in answer to the question, “ Did you and the parties who were at the sale examine the lot at that time, and did you see, or did you hear any one speak of seeing any culvert on the premises ?” says: “ I, and many of the persons who were at the sale, examined the lot before it was offered, and the mode of division, and I did not discover that there was any culvert on the premises, nor did I hear any one else speak of any culvert there. Had I known of any culvert there I certainly should have mentioned it when I offered the property for sale, and the right of parties to use it.”
The advertisement of the commissioner made no mention of any claim of the appellants, or any one else, to the use of the culvert, but offered the lot without any reservation of any easement or privilege whatever existing in any other parties. It is clear, therefore, that there was no reservation in the contract of sale.
By what authority, then, did the commissioner make this reservation in the deed which he tendered to the purchaser? It is claimed by the appellants, 1st: “That the culvert being an easement for all the property of McKildoe, mentioned in the record, in existence for more than fifteen years before the sale, stands under the law of Virginia upon the same footing as an easement which had been used for twenty years stands at common law;” and 2d, “ that the said easement being common to all the property, was not sold by a sale of a part of the property; but the mere right to the use of it was sold; and it still remains common as an easement, as before.”
As to the first proposition, which seems to be a claim by the heirs of McKildoe by prescription, it is sufficient to remark, that the whole property, both the lot on which the culvert was located, and the lot for which the use is claimed, were in McKildoe and his heirs, until the sale *6 to Beutel. The estate of James McKildoe owned two lots at the south-east corner of Third and Marshall streets, fronting on Marshall. The corner lot was sold to Beutel. On this lot was the culvert; and it is through this lot that the heirs McKildoe claim the right to run their waste water. So long as these lots belonged to the same owner there could be no easement in favor of one lot, or servitude upon the other; for a man cannot have an easement over his own land. And, of course, there could be no claim by prescription in the heirs of McKildoe to the use of this culvert, (as an easement for all the property of James McKildoe, their devisor,) because there was no adverse possession until the sale to Beutel. It is very clear that the appellants derived no right to the easement by actual use and enjoyment. Such a right in the estate of another can be created by actual use, only when such use has been adverse, peaceable and uninterrupted, and continued for a period of at least fifteen years.
So long as the tenements were owned and occupied by one and the same person, no easement was created, or began to be created, in favor of the one, and operating as a service or burden upon the other. So long as such unity of possession exists, no right of easement is annexed to one tenement or charged on another; and it is quite immaterial how long the drain or nse of the culvert has subsisted, during such ownership no rights are acquired by such use.
But it is further insisted, that the privilege to use the culvert, being common to all the property, was not sold by a sale of a part, but still remains common, as an easement, to all the property, as before the sale.
The owner of two tenements, who sells one and retains the other, may undoubtedly grant the right of drain, or not, to pass with the estate conveyed; or may reserve *7 such a right over the estate conveyed, for the benefit of the one retained, as he pleases. It is generally a matter of contract, and must be determined by the contract of the parties. Where the intention of the parties is not expressed in terms, the construction of their contract will depend upon the facts of each particular case.
In certain cases, • by implication of law, when one owner of two tenements has so arranged them that one derives a benefit from the other, and sells one of them, the purchaser of the tenement sold takes it with all the benefits and burdens which appear at the time of sale to belong to it, as between it and the property which the vendor retains. The parties are presumed to contract in reference to the condition of the property at the time of the sale. Washburn on Easements, 2d ed. 76, mar. 49. But whether the estate sold be the dominant or servient estate, it is well settled, by numerous cases in England and in the States of the Union, that the easement or other incident of property, in order to pass by implication, must be open, visible, apparent and continuous. And it seems to be equally well settled, that where the servient estate is granted, and the dominant reserved, the easement reserved by implication must be, not only one that is apparent and continuous, and such as is indicated by the condition of the premises at the time of the sale, but the easement claimed must be one strictly of necessity, so that another cannot be substituted at a reasonable expense. Washburn on Easements, 2d edition, 71-82, and cases there cited; Randall v. McLaughlin, 10 Allen, Mass. R. 366; Carbrey v. Willis, 7 Allen R. 364. See also Johnson v. Jordan, 2 Metc. R. 234; Thayer v. Payne, 2 Cush. R. 327; Daniel v. Anderson, 31 L. J. Ch. 610, 2 Eq. Cases 508; Suffield v. Brown, 33 L. J. Ch. 249; and Russell v. Harford, L. K. 2 Eq. 507.
Applying these well settled principles to the case be *8 fore ns, it is clear that the easement claimed, not heinar . 0 reserved at the sale, and not being apparent and obvious to the parties who went there to purchase—not even to the auctioneer who sold the lot—there can certainly, in this case, he no implication raised of a reservation of an easement in favor of the owner of the adjoining tenement. The evidence of the auctioneer is express and positive that he and many persons at the sale went over the lot and did not discover that there was any culvert on the premises. Beutel, the purchaser, who was examined as a witness, states that he examined the property on the day of sale, and that he did not see any gutter or culvert. It is true there is evidence of the lessee of the adjoining lot that there was a surface gutter on the lot, “open and visiblehut it is evident that this witness is mistaken, that there was no such gutter, at the date of the sale; for J. W. Gill, one of the appellants, testifies that “at the time of the sale to Beutel the water from Dr. Garnett’s superficial gutter was emptied on the ground, and ran over the ground from the mouth of that gutter at the dividing fence, some three or four feet, to the mouth of Beutel’s culvert. At the date of the sale to Beutel there was no brick or wooden conductor or gutter to carry the water from the dividing fence to the mouth of Beutel’s culvert. Since the sale I have had a brick gutter put down on the surface, which conducts the water from the mouth of Garnett’s gutter, at the dividing fence, to the mouth of Beutel’s culvert.”
But if this surface gutter, leading into the culvert, known to the party interested in its use, was “open and visible” as a drain through which he had been accustomed to run his waste water, still it is manifest from the evidence that it was not necessary to the enjoyment of the property (the adjoining lot) that this particular drain should be used; for with reasonable expense the adjoin *9 ing lot can be easily connected with the culvert extend-mg under Marshall street, in front of both lots.
Ve are, therefore, of opinion that there is no ei’ror in the decree of the Circuit court of the city of Richmond; and that the same be affirmed. ■
Decree affirmed.