Syllabus.

**Richmond.**

JAMESON v. RIXEY AND OTHERS.

March 18, 1897.

1. PARTITION—*Lien for owelty—Duration of—Personal decree—Merger.*—A lien for owelty of partition partakes of the nature of a vendor's lien, and constitutes a prior encumbrance on the land on which it is charged, and follows the land into whosesoever hands it may come. The land of greater value, and not its owner, is, however, the sole debtor. It is improper to render a personal decree against the owner of the more valuable piece of land for the difference in values, but the lien is not released by taking such personal decree or other security, nor is it merged in such decree, but subsists until it is clearly shown to have been waived, released, or satisfied.

2. PARTITION—*Lien for owelty—Statute of limitations—Presumption of payment—Case at bar.*—Prior to the Code of 1887 there was no statutory limit to the enforcement of a vendor's lien, or a lien for owelty of partition, but the same continued until waived, released, or satisfied, or until sufficient time elapsed to raise the presumption of payment. In the case at bar the decree for partition was made prior to the adoption of the Code of 1887, and the evidence not only repels the presumption of payment, which is a mere presumption of fact, but shows that the lien has been neither waived, released, nor satisfied.

3. LACHES—*Ignorance of rights—Mere delay.*—Laches cannot be imputed to one who is ignorant of his rights. Nor is mere delay always to be considered as laches. The relations of the parties, their degree of kindred, the inability of the debtor to pay, and other circumstances, may be taken into consideration, and where it is clearly shown that the delay has worked no injury and can be satisfactorily accounted for, courts of equity will not allow it to defeat the recovery of a debt shown to be due and unpaid.

4. PURCHASERS—*Title papers—Notice—Means of knowledge—Equitable estoppel.* It is the duty of a purchaser of real estate to look to the title papers under which he buys. He is charged with notice of all that the records disclose affecting his title, and also of all to which the knowledge there acquired would have led him. Means of knowledge with the duty of

using them, are, in equity, equivalent to knowledge itself. In the absence of fraud or deception, where the same means and opportunities of tracing the title to real estate are equally open to both parties, the doctrine of equitable estoppel does not apply.

Appeal from a decree of the Circuit Court of Culpeper county, pronounced June 15, 1895, in a suit in chancery wherein the appellant was the complainant, and the appellees were the defendants.

*Reversed.*

The opinion states the case.

*G. D. Gray* and *Eppa Hunton, Jr.*, for the appellant.

*Rixey & Barbour,* and *J. C. Gibson,* for the appellees.

RIELY, J., delivered the opinion of the court.

The commissioners, in making partition of certain land, to which Kate R. Jameson and Mary George Gibson, the wife of J. C. Gibson, and others, were entitled, charged the parcel of land allotted to Mrs. Gibson with the sum of $419, in favor of the parcel of land allotted to Mrs. Jameson for owelty of partition.

The Circuit Court of Culpeper county by its decree of July 13, 1870, confirmed the partition and the report of the commissioners, and ordered and decreed that "J. C. Gibson and wife" pay to Kate R. Jameson the said sum of $419.

This suit was brought to subject the land on which the lien was charged to its payment. The Circuit Court held that the lien was merged in the personal decree made against Gibson and wife, and that, as the decree was barred by the statute of limitations, the lien could not be enforced, and dismissed the bill.

A lien for owelty of partition partakes of the nature of the vendor's lien, and constitutes a prior encumbrance upon the land on which it is charged, and follows the land into who-

soever hands it may come. The lien is not released by taking the personal obligation of another, or other security for its payment, nor is it merged by a judgment or decree therefor, but subsists until it is clearly shown to have been waived, or released, or has been satisfied. *Coles* v. *Withers*, 33 Gratt. 186; *Hanna* v. *Wilson*, 3 Gratt. 243; *Knisely* v. *Williams*, 3 Gratt. 265; *Paxton* v. *Rich*, 85 Va. 378, 383; *Jones* v. *Sherrard*, 2 Dev. & B. (Eq.) 179; *Dobbin* v. *Rex*, 106 N. C. 444; and *Halso* v. *Cole*, 82 N. C. 161.

The court, by its confirmation of the partition made by the commissioners and of their report, confirmed and established the lien for $419 on the parcel of land allotted to Mrs. Gibson, as provided by the commissioners in the division of the land. The decree in such cases properly should only adjudge that the amounts charged by the commissioners on the most valuable parcels of the land shall constitute liens thereon. The parcel of land on which the debt is charged is held in such cases to be "the debtor and the sole debtor," and not its owner. It is improper to decree personally against the tenant of the lot for the amount of the lien. We are notwithstanding, however, of opinion that the personal decree against "J. C. Gibson and wife" did not have the effect of merging or abrogating the lien established on the land, but that the lien continued to exist and the land to remain the primary fund for its payment. The debt created by the lien was not his debt, and if he had paid it under the force of the decree made against him, he would have been entitled in equity to be subrogated to the lien. And, so far as she was concerned, being a married woman, the decree was void as to her and a nullity.

In *Halso* v. *Cole, supra*, it was held that a judgment obtained for the sums of money charged in partition proceedings upon a parcel of land for owelty of partition, and upon which execution had issued, did not merge the lien or release the

land from it, it not appearing that the judgment had been satisfied.

And in *Paxton* v. *Rich, supra,* Judge Lewis, in distinguishing between the lien of a judgment and a lien of the kind under discussion, said: "The lien (of a judgment) and the judgment are inseparable, and the extinguishment of the latter is the extinguishment of the former. But not so where there is a judgment for a debt secured by a mortgage, deed of trust, or a vendor's lien. There the lien is collateral to the judgment, and may be enforced in equity, although the judgment be barred or annihilated."

The Circuit Court erred in holding that the lien charged upon the land of Mrs. Gibson for owelty of partition was merged by the decree against her husband and herself, and that, as the decree was incapable of enforcement by reason of being barred by the statute of limitations, the lien was lost.

It was contended that, although the court below may have been mistaken in its opinion as to the effect of the decree, yet that the lien, if still existing, was itself barred by the statute of limitations. This position also is untenable. Prior to the Code of 1887 there was no statutory limit to the enforcement of the vendor's lien, or the lien for owelty of partition, but, as before stated, these liens continued to exist until waived, released, or satisfied, or until sufficient time elapsed to raise the presumption of payment. *Coles* v. *Withers, supra; Hanna* v. *Wilson, supra; Tunstall* v. *Withers,* 86 Va. 892; *Paxton* v. *Rich, supra; Smith's Ex'x* v. *Washington, &c. R. Co.,* 33 Gratt. 617; *Bowie* v. *Poor School Society of Westmoreland,* 75 Va. 300; *Stimpson* v. *Bishop,* 82 Va. 190; *Dobbin* v. *Rex, supra; Ruffin* v. *Cox,* 71 N. C. 253; *Sutton* v. *Edmonds,* 5 Ire. Eq. 425.

The present statute prescribing a limit to the enforcement of a deed of trust, mortgage, or lien reserved to secure the payment of unpaid purchase money (Code, Sec. 2935), was enacted long after the creation of the lien sought to be en-

forced in this case, and if the statute applies to a lien for owelty of partition, as to which no opinion is expressed, it being unnecessary to do so, it is very clear that it does not bar the plaintiff from enforcing her lien. Code, Sec. 2938.

Nor can the presumption of payment be relied on to defeat the enforcement of the lien. Payment will be presumed after the lapse of twenty years, or may be inferred from circumstances tending to support it, within a less period than twenty years; but the presumption of payment is simply the presumption of a fact, and may be successfully rebutted by testimony. Wharton on Ev., sec. 1361; *Snavely* v. *Pickle*, 29 Gratt. 27; *Booker's Adm'r.* v. *Booker's Rep.*, Id. 605; and *Updike's Adm'r et als.* v. *Lane*, 78 Va. 132. This was fully done in this case. The husband of Mrs. Gibson, as well as the plaintiff, deposed positively that no part of the debt had been paid, and there was no evidence to the contrary.

It was further contended that the right to enforce the lien had been lost by the laches of the plaintiff. The partition was made in 1870, and, as we have seen, was confirmed by the court in July of that year. This suit was instituted in 1892.

The evidence shows that the plaintiff was not aware of the lien until the summer of 1890, when, having occasion to examine the record of the partition suit in the clerk's office for the purpose of ascertaining on which side of the division line between Mrs. Gibson and herself was a certain house, she discovered the lien charged in her favor upon the former's land. This is made very clear by her own testimony, and that of Mrs. Randolph, who was at that time the deputy clerk of the court. Mrs. Jameson instituted her suit to enforce the lien within less than two years thereafter, which was within a reasonable time after making the discovery. It has been repeatedly held by this court, as a well settled rule of equity jurisprudence, that laches cannot be imputed to a person who is ignorant of his or her rights. *Rowe* v. *Bentley*, 29 Gratt.

763; *Lamar's Ex'or* v. *Hale*, 79 Va. 147; *Massie's Adm'r*
v. *Heiskell's Trustee, et als.*, 80 Va. 789.

It was argued, however, that the plaintiff, being a party to
the partition suit, must be considered to have had notice
of the lien from the time it was created.    That suit, so far as
the record before us discloses, was a friendly one, and was
conducted and managed by the father of Mrs. Jameson and
Mrs. Gibson, and the other parties entitled to the land, and
there is no evidence that she had actual knowledge of the
provisions of the division prior to her discovery of the lien in
1890.    But conceding that she had knowleuge of it all the
time, the debtor as well as the creditor is still alive, and no
evidence has been lost by the death of either of the parties
to the transaction, or by the destruction of records, or loss of
papers, the equitable circumstances which generally constitute
the grounds for the application of the doctrine of laches.
*Rowe* v. *Bentley et als*, 29 Gratt. 763; *Bargamin et als* v.
*Clarke et als*, 20 Gratt. 553; *Morrison's Ex'or et als* v.
*Householder's Adm'r et als.*, 79 Va. 627.

It is perfectly clear that the lien has never been satisfied,
but that the debt is still due.    Nor was any sufficient ground
shown to warrant the presumption of an abandonment of the
claim.    Mere delay is not always to be considered laches; and
it is explained in this instance by the near kinship of the
parties and their friendly relations, living in the same house
for a great part of the time; by the fact that Mrs. Gibson
was a borrower of money from Mrs. Jameson from time to
time until the aggregate reached a very considerable sum;
and by the further fact that Mrs. Gibson was w thout means
of discharging the lien except by a sale of the land.

It was still further contended that the plaintiff was estopped
from enforcing the lien against the land in the possession of
Mrs. Rixey as purchaser, but it is not easy to see upon what
ground the doctrine of estoppel can be invoked in this case.
The record discloses no act of deception in the conduct or

declaration of Mrs. Jameson, nor such gross negligence on her part as to amount to fraud, by which Mrs. Rixey was misled to her injury. Nothing is charged against her except her silence. It is insisted that she should have asserted her lien or made known to Mrs. Rixey her claim to it during the long litigation between LeGrand and wife, and Samuel Rixey, and between them and Mrs. Rixey, his administratrix, after his death.

The partition suit was the very source of the title to the particular parcel of land involved in this controversy. It was the instrumentality by which the undivided interest of Mrs. Gibson in the tract of land devised to her and the other children of Elizabeth Shackelford was segregated and defined. The suit was referred to by its name and style, and the partition therein made adopted, by the trustee in advertising for sale by direction of Samuel Rixey the lots acquired by Mrs. LeGrand and Mrs. Gibson respectively for the payment of the debt to Samuel Rixey, and which their undivided interests were conveyed to secure prior to the partition. The advertisement not only referred to the suit and the partition therein made, but also designated the book and the page thereof in the clerk's office in which the partition was recorded. A copy of the advertisement was filed as an exhibit with the bill in the suit of LeGrand and wife v. Rixey, and became a part of the record thereof. Samuel Rixey also filed as an exhibit with his answer to the bill a copy of the report of the commissioners making the partition. These records, if inspected, could but have brought home to the purchaser of the land under the decree made in the last mentioned suit knowledge of the lien charged thereon for owelty of partition. It is the duty of a purchaser to look to the title papers under which he buys. If he close his eyes to the sources of information, he does so at his peril. "Means of knowledge, with the duty of using them, are, in equity, equivalent to knowledge itself." *Wood et als* v. *Krebs et als*, 30 Gratt. 708; *Long et als* v. *Weller's Ex'or et als.*, 29 Gratt. 347; *Burwell's Ex'ors* v.

*Fauber et als.*, 21 Gratt. 446; and *Lamar's Ex'or* v. *Hale et als., supra.*

Mrs. Rixey, as purchaser of the land under the decree made in the said suit, was affected with notice of all that the record disclosed affecting the title to the land, and also of all to which knowledge there acquired would have led her. She was clearly put upon enquiry. If she had performed her duty, and availed herself of the means pointed out to her, and easily within her reach, she must necessarily have discovered the encumbrance in favor of Mrs. Jameson, and could have ascertained from her whether it had been satisfied or abandoned. She neither made the examination which was her duty as purchaser, nor inquired of Mrs. Jameson, and her injury is the result of her own negligence.

The facts in regard to the encumbrance were matters of public record, and as accessible to Mrs. Rixey as to Mrs. Jameson. Where the same means and opportunity of tracing the title to real estate are equally open to both parties, the doctrine of equitable estoppel does not apply. It is essential for the application of the doctrine of estoppel *in pais* with respect to the title of real property, said Justice Field, in delivering the opinion of the Supreme Court in *Brant* v. *Virginia Coal & Iron Co. et als*, 93 U. S. 337, "that the party claiming to have been influenced by the conduct or declarations of another to his injury was himself not only destitute of knowledge of the true state of the title, but also of any convenient and available means of acquiring such knowledge. Where the condition of the title is known to both parties, or both have the same means of ascertaining the truth, there can be no estoppel."

No sufficient ground of defence has been shown against the enforcement of the lien of the plaintiff against the land in the bill mentioned. The decree appealed from must therefore be reversed, and the cause remanded to the Circuit Court for further proceedings to be had therein to that end.

*Reversed.*