PRESENT: All the Justices

WILLIAM P. WASHINGTON, ET AL.

v. Record No. 151783

RAVI PRASAD

OPINION BY
JUSTICE ELIZABETH A. McCLANAHAN
October 27, 2016

FROM THE CIRCUIT COURT OF PRINCE GEORGE COUNTY
James F. D'Alton, Jr., Judge Designate

After purchasing a lot at a tax sale, appellee Ravi Prasad mistakenly made improvements to a house on a nearby lot owned by appellants, William P. and Elnora T. Washington, without their knowledge or approval. The Washingtons challenge the circuit court's imposition of a constructive trust on their lot in favor of Prasad for the collection of a money judgment in the amount he expended on the house, along with a lien against the lot. Based upon long-standing common law principles regarding notice imputed to purchasers of real property, we reverse the judgment of the circuit court.

BACKGROUND

The material facts in this case are undisputed. Prasad received notice of a public auction from the County listing a number of properties to be sold at a tax sale. Prior to the sale, Prasad accessed the County assessor's records and reviewed the property card for one of the listed properties identified as Tax Parcel 580-07-008C ("Parcel 8-C"). The property card correctly showed the street address for this parcel as 17211 Shands Road. The photograph on the property card, however, incorrectly showed as the structure located on Parcel 8-C, a house owned by the Washingtons. The Washingtons' house is on a lot located two lots north of Parcel 8-C and designated as Tax Parcel 580-07-00-009-A ("Parcel 9-A"). The street address for the Washingtons' house is 17201 Shands Road, but the street address was incorrectly marked as

17211 Shands Road on both the front of the house and the mailbox at the street. William P. Washington ("Washington") testified that 17211 was the address assigned to the property when it was owned by his mother. When he purchased the property in 2004, Washington learned the address had been changed to 17201, but he never changed the fourth digit on the house or mailbox. At all times relevant to this case, the house remained vacant.

Prasad viewed Parcel 9-A prior to the tax sale, believing it to be Parcel 8-C. Although he obtained a tax map showing the physical location of both Parcel 8-C and Parcel 9-A, Prasad drove to the house pictured in the photograph—the house located on Parcel 9-A owned by the Washingtons. Prasad submitted an $11,000.00 bid for Parcel 8-C at the County tax sale. His bid was ultimately approved and his deed was recorded.

Shortly thereafter, Prasad mistakenly began renovating the Washingtons' house on Parcel 9-A. Approximately two months later, after expending more than $23,500 on the renovations, Prasad received a letter from the Washingtons' attorney directing Prasad to vacate the premises. Prasad's work on the house was done without the Washingtons' knowledge or approval.

Prasad filed a two-count complaint against the Washingtons after they refused to pay him for the work he procured for their house. In Count I, Prasad asked the circuit court to impose a constructive trust on the Washingtons' lot, and to effect its sale, based on allegations that they had been "unjustly enriched as a result of the fraud perpetrated by [them]" through misrepresenting the address of the house. In Count II, Prasad asked the court for an award of damages in the amount he had expended on the house based on an implied contract in law theory.

During the bench trial, Prasad testified that, in purchasing Parcel 8-C at the tax sale, he did not think it was necessary to be represented by a lawyer, or to obtain a title search and/or a

2

survey of the property. Prasad began "flipping" houses after retiring from his job as a chemical engineer, he further explained, and "[o]ut of the 20 or 30 properties I have purchased, I have never taken title insurance, because I trust the courts and I trust the County." He nonetheless acknowledged that his contract of sale was for Parcel 8-C and that the contract stated, "this property is offered for sale as-is, with all faults and without any warranty, either expressed or implied." When asked whether he looked at his deed to Parcel 8-C, Prasad responded, "[w]hen this whole thing blew up, I looked at every line of every page, yes, sir. But not before."

The Washingtons presented at trial, among other things, a copy of a plat in Prasad's chain of title to Parcel 8-C, which is, in fact, referenced in his deed to this property. The two lots comprising Parcel 8-C and 9-A (as well as the intervening lot) are shown on the plat and match the depiction of their physical location on the County's tax map of the area. As shown on both the plat and tax map, Parcel 8-C is located along the curve of the street on which it fronts, unlike Parcel 9-A, which fronts a straight stretch of the street two lots north of Parcel 8-C.

At the close of the evidence, Prasad argued that, while no fraud on the part of the Washingtons had been shown, he was not required to prove fraud in order to be entitled to the relief requested. He claimed the Washingtons were still "unjustly enriched" because they displayed the wrong address for their house, upon which both he and the County "obviously" relied. Thus, he asserted, based on "equity and good conscience," his expenditures on the house "ought to be refunded" under a contract implied in law, as recognized under Virginia law. Under such theory, Prasad continued, an obligation of "due diligence" in the purchase of real property does not apply; but, if it does apply, a title search would not have revealed his mistake in the identity of the location of Parcel 8-C.

In response, the Washingtons argued that Prasad was not entitled to prevail on a theory of implied contract in law on the grounds that the Washingtons had been unjustly enriched. That was because Prasad did not meet one of the essential elements for such a cause of action: that "[t]he defendant knew of the benefit and should reasonably have expected to repay the plaintiff." Here, there was no such knowledge or expectation on the part of the Washingtons. In addition, the Washingtons argued that had Prasad undertaken the due diligence required for a purchaser of real property, he would have determined the correct location of the lot he purchased at the tax sale, and knowledge of the same was imputed to him, citing *Kian v. Kefalogiannis*, 158 Va. 129, 163 S.E. 535 (1932), and *Morris v. Terrell*, 23 Va. (2 Rand.) 6 (1823). Thus, the Washingtons concluded, Prasad's claims for a constructive trust and an implied contract were without merit.

In announcing its decision in favor of Prasad from the bench, the circuit court rejected the Washingtons' argument that Prasad's claims were negated by his failure to undertake due diligence in his purchase of Parcel 8-C. Due diligence, the court opined, was not relevant "in an equitable situation." The court, however, also rejected Prasad's implied contract claim. The court based its decision, instead, on *Faulknier v. Shafer*, 264 Va. 210, 563 S.E.2d 755 (2002), where this Court held that the plaintiff stated a cause of action for imposition of a constructive trust on life insurance proceeds paid to the recipient in breach of the decedent's separation agreement with the plaintiff. *Id*. at 217, 563 S.E.2d at 759. This Court reached that decision, as the circuit court explained, because (quoting *id*. at 215, 563 S.E.2d at 758) it would have been "'contrary to the principles of equity'" for the recipient to retain the proceeds, even though she acquired them without any "'fraud or improper means'" on her part. Accordingly, in its final order, the circuit court imposed a constructive trust on the Washingtons' lot in favor of Prasad with a money judgment in the amount he expended on the house, totaling $23,508, on a quantum

4

meruit basis. The court also imposed a lien against the lot for that amount. This appeal followed.

ANALYSIS

Where, as here, "the essential facts are undisputed, we are presented only with a question of law regarding the circuit court's application of the law to those facts and therefore apply a de novo standard of review." *Rodriguez v. Leesburg Bus. Park, LLC*, 287 Va. 187, 193, 754 S.E.2d 275, 278 (2014) (citing *Hilton v. Martin*, 275 Va. 176, 180, 654 S.E.2d 572, 574 (2008)).

The Washingtons assert in their first assignment of error that the circuit court erred by ruling in favor of Prasad regarding the improvements he made to their property because he did so after having actual and constructive notice that he was on their property, thus negating his claims. We agree with the Washingtons that, based on the undisputed facts, Prasad had at least constructive notice of the actual location of both the lot he purchased and the Washingtons' lot. Therefore, we conclude the circuit court erred as a matter of law in awarding to Prasad a constructive trust and money judgment against the Washingtons and imposing a lien against their lot.[1]

This Court long ago recognized that "'no principle is better established than that a purchaser must look to every part of the title which is essential to its validity. The law requires reasonable diligence in a purchaser to ascertain a defect of title.'" *Burwell v. Fauber*, 62 Va. (21 Gratt.) 446, 464 (1871) (quoting *Brush v. Ware*, 40 U.S. 93, 111 (1841)). Absent such "due degree of caution," the purchaser "will not be entitled to protection." *Id*. at 463. Under this standard, the purchaser "is bound, not only by actual, but also by constructive notice, which is

---

[1] In light of this conclusion, we need not address the Washingtons' second assignment of error in which they assert that the circuit court erred in awarding Prasad a constructive trust because he was seeking an equitable remedy with unclean hands.

the same in its effect as actual notice." *Id*. Accordingly, "[h]e must look to the title papers under which he buys, and is charged with notice of all the facts appearing upon their face, or to the knowledge of which anything there appearing will conduct him. He has no right to shut his eyes or his ears to the inlet of information, and then say he is a bona fide purchaser without notice." *Id*. As similarly stated in *Jameson v. Rixey*, 94 Va. 342, 26 S.E. 861 (1897), if the purchaser "close[s] his eyes to the sources of information" contained in "the title papers under which he buys," the purchaser "does so at his peril. Means of knowledge, with the duty of using them, are, in equity, equivalent to knowledge itself." *Id*. at 348, 26 S.E. at 863 (citations and internal quotation marks omitted); *see also Morris*, 23 Va. (2 Rand.) at 13 ("It is [a purchaser's] folly or willful neglect, not to have resorted to the means palpably in his power, of ascertaining the true state of the title to the property for which he had treated."). In short, relevant title information about which the purchaser should have known is "imput[ed] to him" under Virginia law. *Kian*, 158 Va. at 132, 163 S.E. at 536.

Applying these principles, this Court has consistently held that "a person with notice, actual or constructive, of a defect in his title is not entitled, upon being dispossessed by the rightful owner, to recover compensation for permanent improvements made on the premises." *Id*. at 132-33, 163 S.E. at 537 (citing *Smith v. Woodward*, 122 Va. 356, 94 S.E. 916 (1918), *McDonald* v. *Rothgeb,* 112 Va. 749, 751-52, 72 S.E. 692, 693 (1911), *Nixdorf v. Blount,* 111 Va. 127, 129, 68 S.E. 258, 259 (1910), *Fulkerson v. Taylor,* 102 Va. 314, 46 S.E. 309 (1904), and *Effinger v. Hall,* 81 Va. 94 (1885)); *see also Butler v. Hayes*, 254 Va. 38, 44, 487 S.E.2d 229, 232 (1997); *Richmond v. Hall*, 251 Va. 151, 157, 466 S.E.2d 103, 106 (1996); *Richardson v. Parris*, 246 Va. 203, 206, 435 S.E.2d 389, 391 (1993); *White v. Pleasants*, 227 Va. 508, 514-15, 317 S.E.2d 489, 492-93 (1984).

6

While Prasad was the purchaser of Parcel 8-C and not Parcel 9-A, the Washingtons' property upon which he mistakenly made the improvements, the above-stated principles are nonetheless controlling here. It was Prasad's failure to exercise due diligence in his purchase of Parcel 8-C that resulted in his misidentification of Parcel 9-A as the property he was purchasing. A proper review of the tax map in Prasad's possession identifying both Parcel 8-C and Parcel 9-A, along with the plat in his chain of title identifying both of these properties, of which he had constructive notice, would have informed Prasad of the actual location of these properties. In failing to conduct such a review, Prasad proceeded "at his peril." *Jameson*, 94 Va. at 348, 26 S.E. at 863. Consequently, with this knowledge imputed to him, Prasad is not entitled, after "being dispossessed by the rightful owner [of Parcel 9-A], to recover compensation for [the] permanent improvements made on the premises." [2] *Kian*, 158 Va. at 132, 163 S.E. at 537.

In so holding, we reaffirm this Court's reasoning in *McDonald*: "It seems to us that to hold that a purchaser can close his eyes to his record title and recover for improvements on the theory that there was reason to believe the title good . . . would be to set a premium on negligence and nullify our registry statutes." 112 Va. at 753, 72 S.E. at 693 (internal quotation marks and citation omitted).

---

[2] The principal cases relied upon by the circuit court and Prasad are inapposite. As discussed above, the circuit court based its decision on *Faulknier*, where this Court held that the plaintiff stated a cause of action for imposition of a constructive trust on life insurance proceeds, 264 Va. at 217, 563 S.E.2d at 759, and thus having nothing to do with principles governing the purchase of real property. Prasad, in turn, relies principally on *Great Atlantic & Pacific Tea Co. v. Cofer*, 129 Va. 640, 106 S.E. 695 (1921), involving whether, in the context of an unlawful detainer action, the facts established that a purchaser of the leased property should have made inquiry about an unrecorded lease such as would put him on constructive notice of its terms. Unlike the present case, there was no information in the hands of the purchaser or in his chain of title that was necessarily imputed to him regarding his purchase of the property. *Id*. at 655-61, 106 S.E. at 699-701.

CONCLUSION

For the foregoing reasons, we will reverse the judgment of the circuit court and enter final judgment for the Washingtons.

*Reversed and final judgment.*