COURT OF APPEALS OF VIRGINIA

Present: Chief Judge Decker, Judges Malveaux and Duffan
Argued at Richmond, Virginia

LINDA BUONAURO

MEMORANDUM OPINION[*] BY
v.      Record No. 0296-25-2          CHIEF JUDGE MARLA GRAFF DECKER
MARCH 17, 2026

CAROL L. SCOTT

FROM THE CIRCUIT COURT OF MADISON COUNTY
David B. Franzen, Judge

Rachel L. Yates (Yates Appellate Law, on briefs), for appellant.

Rex L. Edwards, Jr. (Davies, Barrell, Will, Lewellyn & Edwards,
PLC, on brief), for appellee.


Linda Buonauro appeals the circuit court's order entering judgment in favor of Carol

Scott on her claim for unjust enrichment. Buonauro argues that the evidence was insufficient to

prove she was unjustly enriched by Scott's payments that partially funded the construction of a

building on her property. She also suggests that an action for unjust enrichment was not a proper

basis for recovery under the circumstances of this case. We hold the trial court did not err and

affirm the judgment.

BACKGROUND[1]

Buonauro and Scott participated in showing dogs together for about thirty years. Both were

Airedale-Terrier enthusiasts, and they co-owned a prize-winning dog.

---

[*] This opinion is not designated for publication. *See* Code § 17.1-413(A).

[1] On appeal, this Court views the evidence, and all reasonable inferences that may be drawn from it, "in the light most favorable to [Scott]" as the prevailing party below. *See Sroufe v. Waldron*, 297 Va. 396, 397 (2019) (per curiam) (quoting *Bitar v. Rahman*, 272 Va. 130, 141 (2006)); *Bitar*, 272 Va. at 137.

Scott owned a professional dog kennel in Texas. She had difficulty managing the kennel after her husband died, so she decided to sell it. She sought a home in a more temperate climate with enough space for a "hobby" kennel.

Buonauro lived in New Jersey, where she had a full-time job as an educator and also owned a commercial kennel. In addition to her residence in New Jersey, she owned property in Brightwood, Virginia, on which she had built a small house for herself and her dogs.

In January 2019, Scott, Buonauro, and their mutual friends Carolyn Campbell, Peggy Frye, and Katherine Rogers, discussed opening a hobby kennel together on Buonauro's property in Brightwood. They talked about a joint venture making and selling dog food, training and breeding their dogs, and participating in competitions. Under the tentative plan, Buonauro would provide the land, Scott would fund the kennel construction, and Campbell would work with the contractor and provide labor to operate the kennel. Their goal was to work as a "team" to "make a place for [Scott]" in Virginia.

Over the next few months, the group met several times and discussed their ideas. As part of their conversations, Buonauro suggested that after Scott sold her Texas property, she should move temporarily into Buonauro's home in Brightwood, which was empty because Buonauro lived in New Jersey. While discussing the kennel construction, Buonauro told Scott that she would allow her to purchase several acres of Buonauro's land in Brightwood, at $10,000 an acre, so Scott could build her own home near the kennel. Scott planned to live close enough that she could walk to the kennel to care for her dogs.

In September 2019, Buonauro signed an affidavit stating her intention to erect a building on her property.[2] Around that same time, construction began on the kennel. The group did not,

---

[2] The affidavit was required because Buonauro sought to have the property classified as being for agricultural use, thereby qualifying it for an exemption from Uniform Statewide Building Code requirements. She explained that she believed the building qualified for an agricultural

however, finalize a specific plan regarding the kennel or put an agreement in writing. In October 2019, Campbell and Frye traveled to Scott's home in Texas to help her pack her things, and Scott shipped a lot of kennel fencing for the project to Virginia. The following month, Scott completed the sale of her Texas property and moved to Virginia to take up residence in Buonauro's Brightwood home. Upon arriving, she was surprised to find that two concrete pads had been poured for the kennel instead of one. Nevertheless, Scott provided funds to Campbell to pay for the concrete pads and the construction of the remainder of the kennel. Although Scott gave Campbell a budget of $300,000 for the project, the kennel was much larger and more expensive than Scott had anticipated. She ultimately spent $416,000 to construct what she described as a dog "Taj Mahal" and said she "couldn't pay any more."

As the kennel construction progressed, Scott contacted Buonauro about purchasing a parcel of Buonauro's land next to the kennel as the two had discussed, and they considered several different locations on Buonauro's seventy-two-acre tract. But in April 2020, Buonauro informed Scott by email that she was unable to subdivide the property "[at that time] or in the near future," suggesting the delay was due to the pandemic and the backlog of meetings "in county government." In August 2020, Buonauro offered to sell some of her land to Scott with conditions that would limit Scott's ability to subdivide or resell it for a period of time. Those conditions were neither acceptable to Scott nor consistent with their prior conversations. Buonauro never offered Scott a parcel of her real estate "to build on under the terms and conditions that [the two] had discussed before [Scott] moved [to Brightwood]." Buonauro and Scott also had a disagreement over how to

---

classification because in conjunction with the kennel, the group planned to manufacture dog food there using livestock raised and other ingredients grown on the premises.

handle Scott's "month-to-month tenancy" at the Brightwood house. As a result, Buonauro sent Scott a letter directing her to vacate the house by the end of May 2021.[3]

In June 2021, Madison County issued a building code violation notice and correction order for the kennel.[4] The order prohibited occupancy, forcing Scott to remove her dogs. As a result, she relocated to North Carolina. Rather than remove the kennel structures, Buonauro spent about $20,000 to bring them into compliance to resolve the permit violations.

Scott filed the instant suit against Buonauro for unjust enrichment. She alleged that she had spent more than $400,000 funding the dog kennel on the promise that she could buy a parcel of Buonauro's land on which to build her own home but that Buonauro did not honor her commitment after the kennel was constructed. Although the parties had no formal written contract, Scott contended that Buonauro reasonably expected to provide a parcel of her land to Scott in exchange for Scott's financial investment in the kennel. Scott contended that Buonauro's failure to follow through on her part of the agreement meant that Buonauro received a windfall of the value of the kennel.

During the two-day jury trial, Scott presented the evidence outlined above. The evidence proved that the kennel structures, after Buonauro's $20,000 remediation, had a value of $370,000. Scott's expert, a real estate appraiser, testified that the value of her contributions to the kennel's construction was $240,000. At the conclusion of Scott's evidence, Buonauro made a motion to strike. She argued that no evidence proved Scott conferred a benefit on her or expected repayment. Buonauro further suggested that she did not retain the benefit of the structures without paying for

---

[3] Scott left Buonauro's Brightwood home as requested but had nowhere to go. While her dogs remained in the finished portion of the kennel, she slept in her van, and she used the kennel's bathroom facilities.

[4] The kennel was determined not to qualify for an agricultural exemption from Uniform Statewide Building Code requirements.

their value because they were constructed without the proper permits. She suggested that the parties had an oral contract, which precluded Scott from recovering on a cause of action for unjust enrichment. The circuit court denied the motion.

Buonauro testified in her defense and claimed that the discussions about allowing Scott to purchase a portion of her land did not occur until after Scott moved to Virginia and that Scott never expected anything in exchange for building the kennel. Her expert testified that the value of Scott's contributions to the kennel structure was $84,000.

The court instructed the jury that it was to determine whether the parties had a contract governing the construction on Buonauro's land and, if they did not, whether Scott was entitled to be repaid, under unjust-enrichment principles, for any benefit the construction conferred on Buonauro. The jury received several different instructions on the elements of a contract, defined for the jurors as "an agreement for consideration between two or more parties." They were told that "[a] contract arises when an offer is accepted" and that one "may be implied f[rom] the circumstances and the conduct of the parties." The jury was further instructed that "[f]or a contract to exist, the minds of the parties must have met on every material term of the alleged arrangement." Finally, it was told that if no contract existed, "an action in restitution" would permit Scott to recover if Buonauro "received a gain at [Scott]'s expense under circumstances that ma[d]e it unjust for [Buonauro] to keep the gain."

After hearing all of the evidence, the instructions, and the parties' arguments, the jury awarded Scott $370,000 in damages on her unjust-enrichment claim. Buonauro moved to set aside the verdict or reduce the judgment. In her written motion, she again contested whether unjust enrichment was an appropriate cause of action under the circumstances and whether the evidence was sufficient to prove she should have expected to repay Scott. The circuit court denied the motion to set aside the verdict but reduced the judgment to $240,000.

ANALYSIS

"It is well-settled that 'a party who comes before [the appellate court] with a jury verdict approved by the circuit court "occupies the most favored position known to the law.""" *N. Va. Kitchen, Bath & Basement, Inc. v. Ellis*, 299 Va. 615, 622 (2021) (quoting *Ravenwood Towers, Inc. v. Woodyard*, 244 Va. 51, 57 (1992)). "As a general rule, . . . a [circuit] court's judgment sustaining a jury verdict [will not be set aside on appeal] unless it is 'plainly wrong or without evidence to support it.'" *Id.* (second alteration in original) (quoting *Parson v. Miller*, 296 Va. 509, 524 (2018)). Accordingly, the appellate court "consider[s] whether the evidence presented, taken in the light most favorable to the plaintiff," along with all reasonable inferences from it, "was sufficient to support the jury verdict in favor of the plaintiff." *Sroufe v. Waldron*, 297 Va. 396, 397 (2019) (per curiam) (quoting *Bitar v. Rahman*, 272 Va. 130, 141 (2006)); *see Bitar*, 272 Va. at 137.

A plaintiff seeking to recover for unjust enrichment must prove that "(1) [she] conferred a benefit on the defendant; (2) the defendant knew of the benefit and should reasonably have expected to repay [her]; and (3) the defendant accepted or retained the benefit without paying [the plaintiff] for its value." *James G. Davis Constr. Corp. v. FTJ, Inc.*, 298 Va. 582, 597 (2020).

A defendant's "course of conduct" with the plaintiff may establish a reasonable expectation of repayment. *Id.* at 598. On this record, a reasonable factfinder could infer that Buonauro's "course of conduct" with Scott established unjust enrichment. *See id.* The parties had discussed building the dog kennel since 2019, even though they did not formalize the plan or the agreement. Still, the evidence, viewed under the proper standard, indicates that in their discussions, Buonauro led Scott to believe that in exchange for Scott's funding the construction of the kennel, Buonauro would sell Scott land at a specific price per acre when she moved to Virginia so that Scott

could build a home near the kennel. Buonauro and Campbell started the kennel construction without Scott's specific agreement, expecting Scott to pay for it, which she did. Yet despite Scott's actions, Buonauro directed Scott to vacate her temporary Brightwood residence and failed to provide Scott what she should reasonably have expected as repayment for the financial investment—the option to buy land at a specific price per acre on which Scott could build her own home near the kennel. Accordingly, the circuit court's judgment sustaining the jury verdict was not "plainly wrong or without evidence to support it." *See N. Va. Kitchen, Bath & Basement, Inc.*, 299 Va. at 622 (quoting *Parson*, 296 Va. at 524).

Buonauro contends that Scott sought the wrong remedy. She suggests that the evidence supported a claim for quantum-meruit damages rather than one for unjust enrichment because the parties had an agreement without a proper contract. The Supreme Court of Virginia has recognized that "'considerable confusion [exists] between the terms "quantum meruit" and "unjust enrichment"'" and "the two theories . . . can easily [and improperly] be conflated." *T. Musgrove Constr. Co. v. Young*, 298 Va. 480, 485 (2020) (quoting *Bowden v. Grindle*, 651 A.2d 347, 350 (Me. 1994)). In this instance, however, the caselaw does not support Buonauro's claim that unjust enrichment was the wrong basis for recovery.

Quantum meruit describes the cause of action that permits recovery under an implied-*in-fact* contract theory. *See Bowden*, 651 A.2d at 350; *T. Musgrove Constr. Co.*, 298 Va. at 485-86, 485 n.3. To establish an implied-in-fact contract, the plaintiff must prove, among other things, "facts to raise an implication that the defendant promised to pay the plaintiff for such benefit." *Schmidt v. Household Fin. Corp., II*, 276 Va. 108, 116 (2008) (quoting *Nedrich v. Jones*, 245 Va. 465, 476 (1993)); *see Marine Dev. Corp. v. Rodak*, 225 Va. 137, 142 (1983). This element can be proved with evidence that the "service [wa]s performed by [the plaintiff] *at the . . . request* of [the defendant]." *T. Musgrove Constr. Co.*, 298 Va. at 485 (emphasis added) (quoting *Mongold*

*v. Woods*, 278 Va. 196, 203 (2009)).  In that circumstance, "the law implies a contract[] that the party who performs the service shall be paid a reasonable compensation therefor." *Id.* (quoting *Mongold*, 278 Va. at 203).[5]

Unjust enrichment, on the other hand, is a cause of action based on an implied-*in-law* contract—which is not really a contract at all—and it describes a basis for recovery that does *not* require proof of a promise to pay.  *See James G. Davis Constr. Corp.*, 298 Va. at 591, 597; *Bowden*, 651 A.2d at 350; *see also T. Musgrove Constr. Co.*, 298 Va. at 485 n.3 (explaining that a "quasi-contract" action, one "implied in law," is really "in restitution" rather than in contract (quoting Candace Kovacic-Fleischer, *Quantum Meruit and the Restatement (Third) of Restitution and Unjust Enrichment*, 27 Rev. of Litig. 127, 132-33 (2007))).  A distinguishing element of an unjust-enrichment claim is that the defendant merely "knew of the benefit" conferred by the plaintiff and "should reasonably have expected to repay" her.  *T. Musgrove Constr. Co.*, 298 Va. at 486 (quoting *Schmidt*, 276 Va. at 116); *see James G. Davis Constr. Corp.*, 298 Va. at 591 ("The doctrine of unjust enrichment . . . requir[es] one who accepts and receives goods, services, or money from another to make reasonable compensation for those services.").  In other words, no implicit promise to pay, proved by a specific "request" for the service, is required.  *See T. Musgrove Constr. Co.*, 298 Va. at 485-86 (quoting *Mongold*, 278 Va. at 203); *Fessler v. IBM*, 959 F.3d 146, 158 (4th Cir. 2020) (applying Virginia law).  Stated simply, the recovery of quantum-meruit damages requires "a request by the defendant for performance of services by the plaintiff," and without "such a request[,] the plaintiff's recovery is governed by the principles of

[5] Recovery of quantum-meruit damages is appropriate when there is a contract between the parties but they have no agreement on price, the compensation is "too indefinite," "there is a misunderstanding as to the price to be paid," or "the contract is void and of no effect." *T. Musgrove Constr. Co.*, 298 Va. at 486 (quoting *Marine Dev. Corp.*, 225 Va. at 140-41).

unjust enrichment." Kent Sinclair, *Sinclair on Virginia Remedies* § 38-1[A] n.2 (5th ed. Supp. 2025) (citing *T. Musgrove Constr. Co.*, 298 Va. at 485-86).[6]

Here, a cause of action for unjust enrichment rather than for quantum-meruit damages was the proper remedy because the evidence, viewed under the proper standard, supports a finding that Buonauro and Scott did not have an implied-in-fact contract, only discussions about how a possible joint venture might work. The evidence, viewed in the light most favorable to Scott, proved that the two explored the possibility of a joint venture in conversations with their friends—including Campbell—and Buonauro said the group could "use her land." Buonauro, however, never specifically "request[ed]" that Scott pay for the construction of the kennel, as required to permit a quantum-meruit recovery. *See T. Musgrove Constr. Co.*, 298 Va. at 485 (quoting *Mongold*, 278 Va. at 203). Further, with Campbell "in charge," construction had begun before Scott arrived in Virginia, and Scott made payments to both Campbell and various subcontractors for the work. But no money went to Buonauro. Although construction of the kennel continued and Scott paid more than $400,000 for that purpose, knowing that she still needed "a safe place for [her own] dogs," the evidence supports a finding that Buonauro did not request it. Instead, the evidence proved that Buonauro merely knew of the benefit. *See id.* at 485-86.[7] Consequently, the evidence supports the conclusion that unjust enrichment was the

___

[6] Additionally, the measure of damages differs. *T. Musgrove Constr. Co.*, 298 Va. at 486. Quantum meruit describes an award of damages of "the reasonable value of the services provided." *Id.* For unjust enrichment, "[t]he measure of recovery . . . is limited to the benefit realized and retained by the defendant." *Id.* As a result, "[t]he measure of damages is . . . not necessarily the same." *Id.*

[7] In fact, Buonauro's appellate counsel correctly acknowledged at oral argument that "there was . . . no binding agreement" between the parties, the construction of the kennel was not a "service that [Buonauro] wanted or asked for," and she merely "allowed" it to be built on her property. Counsel characterized Buonauro as merely "know[ing about] and agree[ing to]" the construction of the kennel on her land. Counsel's arguments reinforce the testimony that Scott's construction of the kennel did not occur "*at the . . . request* of" Buonauro, as required to establish

- 9 -

appropriate claim, "limit[ing Scott] to the benefit realized and retained by [Buonauro]." *See id.* at 486.[8]

Finally, citing *Washington v. Prasad*, 292 Va. 658, 664 (2016), Buonauro contends that Scott cannot recover for the improvements to Buonauro's real property because Scott's failure to enter into a written contract with Buonauro showed a lack of due diligence. Buonauro's reliance on *Washington* is misplaced and seeks to nullify the operation of unjust-enrichment principles in the real-property context. The Supreme Court held in *Washington* that Prasad was not entitled to compensation for renovations he performed on another's property *accidentally* because he "fail[ed] to exercise due diligence." *Id.* at 664-65. Prasad was mistaken about which parcel of property he purchased from Prince George County during a public auction, and he performed the renovations at issue without the knowledge or approval of the parcel's true owners. *Id.* at 660-61, 664-65. The instant case is both factually and legally distinguishable. Scott's funding of the kennel construction on Buonauro's property was not an accident stemming from a lack of due diligence. Instead, Scott conferred a benefit on Buonauro about which Buonauro had full knowledge. And Buonauro should reasonably have expected to repay Scott by selling her a parcel of adjacent land on the terms previously discussed, but Buonauro failed to do so. *See*

---

an implied-in-fact contract supporting a quantum-meruit recovery. *T. Musgrove Constr. Co.*, 298 Va. at 485 (emphasis added) (quoting *Mongold*, 278 Va. at 203).

[8] Buonauro suggests that unjust enrichment does not apply because she and Scott "never expected [Buonauro] to pay for the construction of the kennel while it was built." This argument fails to acknowledge that unjust enrichment for a benefit conferred does not require that the parties contemplated repayment in the same form. *See James G. Davis Constr. Corp.*, 298 Va. at 591. Instead, as counsel for Buonauro correctly noted at oral argument, unjust enrichment requires merely an expectation of "reasonable compensation" *in whatever form* for the "goods, services, or money" received and accepted. *See id.* Here, the evidence supported a finding that Scott expected to receive the opportunity to purchase several acres of land from Buonauro near the kennel at an agreed-upon price, necessary for her enjoyment of an interest in the kennel for which she paid. Only when that initial expectation was not met did she seek to recover money damages, the sole reasonable alternative under the circumstances.

*James G. Davis Constr. Corp.*, 298 Va. at 597.  Under the circumstances presented here, the Supreme Court's holding in *Washington* does not apply to bar Scott's recovery on her unjust-enrichment claim.

CONCLUSION

We hold the trial court did not err by concluding that the evidence was sufficient to prove Scott's claim for unjust enrichment.  Further, it correctly rejected Buonauro's claim that the evidence instead proved entitlement to quantum-meruit damages, available under a different legal theory not pleaded by Scott.  For these reasons, the judgment is affirmed.

*Affirmed.*